UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLAUDE ROBERTSON and JOHN SZALASNY,
individually, and on behalf of others similarly situated,

      Plaintiffs,

      vs.

TRINITY PACKAGING CORPORATION,

       Defendant.

Civil Action No.:
1:19-cv-00659-JLS-JJM

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, SERVICE AWARDS,
CLASS COUNSEL'S PROPOSED ATTORNEYS' FEES AND COSTS, AND
<u>SETTLEMENT ADMINISTRATOR'S FEES AND COSTS</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

III.  APPROVAL OF THE SETTLEMENT UNDER RULE 23 .................................... 3

   A.   The New York Rule 23 Class Should be Finally Certified.................................... 3

   B.   The Class Notice was Adequate ........................................................................... 3

   C.   The Settlement is Fair, Reasonable, and Adequate .............................................. 4

   D.   The Settlement is Procedurally and Substantively Fair ........................................ 7

IV.  APPROVAL OF THE SETTLEMENT UNDER THE FLSA ................................. 9

V.   APPROVAL OF THE PROPOSED SERVICE AWARDS ....................................... 9

VI.  APPROVAL OF THE PROPOSED FEES AND COSTS...................................... 11

VII.      CLASS COUNSEL'S ACTIONS IN THE *BONURA* CASE ............................ 14

    A.    Class Counsel Did Not Behave Unethically in *Bonura* ...................................... 14

    B.    Class Counsel Did Not Breach Any Ethical Duties to Their Clients ................. 18

    C.    Class Counsel Did Not Breach any Fiduciary Duties to the Putative Collective and Class Members ..................................................................................................... 19

    D.    Class Counsel's Conduct in *Bonura* Does Not Negate Their Showing of Adequacy Here      22

VIII.     CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

Cases

*Taylor v. Delta-Sonic Car Wash Sys*., 2017 WL 436045, 2017 U.S. Dist. LEXIS 14394 (W.D.N.Y. Jan. 31, 2017) ..................................................................................................... 12

*Acevedo v. Workfit Med. LLC,* 187 F. Supp. 3d 370 (W.D.N.Y. 2016) .................................. passim

*Allen v. Dairy Farmers of Am*., 2015 U.S. Dist. LEXIS 196784, at *13 (D. Vt. June 30, 2015) . 24

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 279 F.R.D. 90, 108 (E.D.N.Y. 2012) .... 23

*Bondi v. DeFalco,* 2020 WL 2476006, 2020 U.S. Dist. LEXIS 84701, at *15-16 (S.D.N.Y. May 13, 2020) ............................................................................................................. 10

*Brown v. S. Nassau Cmtys. Hosp*., 2019 NY Slip Op 32239(U), ¶¶ 3-5 (Sup. Ct.) ...................... 17

*Buchanan v. Pay-O-Matic Check Cashing Corp*., 2020 WL 8642081, 2020 U.S. Dist. LEXIS 188658, at *26 (E.D.N.Y. Oct. 8, 2020) .................................................................... 7

*Chambery v. Tuxedo Junction Inc*., 2014 WL 3725157, 2014 U.S. Dist. LEXIS 101939, at *21-26
(W.D.N.Y. July 25, 2014) (same)..................................................................... 12

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)........................................ 17

*City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)............................................... 7

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011).... 23

*Cunningham v. Suds Pizza, Inc*., 290 F. Supp. 3d 214 (W.D.N.Y. 2017)....................... 8, 9, 11, 12

*Desantis v. Snap-On Tools Co., LLC*, 2006 WL 3068584, 2006 U.S. Dist. LEXIS 78362, at *34
(D.N.J. Oct. 27, 2006)..................................................................................... 22

*Elston v. Horizon Glob. Ams*., 2020 WL 6318660, 2020 U.S. Dist. LEXIS 200494, at *16-18 (D.
Kan. Oct. 28, 2020).......................................................................................... 7

*Farrar v. Hobby*, 506 U.S. 103, 114, (1992)................................................................... 13

*Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020) ......................................... 13, 17, 19

*Formento v. Joyce*, 168 Ill. App. 3d 429, 437, 118 Ill. Dec. 857, 862, 522 N.E.2d 312, 317 (1988)
.................................................................................................................... 20

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ................................... 9, 11

*Godson v. Eltman, Eltman, & Cooper, P.C*., 328 F.R.D. 35 (W.D.N.Y. 2018)........................... 3, 7

*Goldberger v. Integrated Res*., 209 F.3d 43, 50 (2d Cir. 2000)........................................... 11

*Gordon v. Kaleida Health*, 299 F.R.D. 380, 390-91 (W.D.N.Y. 2014) ..................................... 17

*Gutierrez-Bejar v. SOS Int'l, LLC*, 2019 WL 5683901, 2019 U.S. Dist. LEXIS 190326, at *23
(C.D. Cal. Nov. 1, 2019) ................................................................................. 16

*House v. Akorn, Inc.*, 2018 WL 4579781, 2018 U.S. Dist. LEXIS 163924, at *6-7 (N.D. Ill. Sep.
25, 2018) ....................................................................................................... 21

*In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14 (2d Cir. 1986)................................... 23, 24

*Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1083-85 (S.D. Iowa 2007) ......................... 22

*Kulig v. Midland Funding, LLC*, 2014 WL 5017817, 2014 U.S. Dist. LEXIS 137254 (S.D.N.Y. Sept. 26, 2014) ............................................................................................. 19, 23

*McKnight v. Erico Int'l Corp.*, 2023 WL 2003276, 2023 U.S. Dist. LEXIS 25981 (N.D. Ohio Feb. 8, 2023) ............................................................................................................. 6, 7

*Schick v. Berg*, 2004 WL 856298, 2004 U.S. Dist. LEXIS 6842 (S.D.N.Y. Apr. 20, 2004), *aff'd*, 430 F.3d 112 (2d Cir. 2005) ....................................................................................... 21

*Schick v. Berg*, 430 F.3d 112 (2d Cir. 2005) ................................................................................. 20

*Stock v. Xerox Corp.*, 516 F. Supp. 3d 308 (W.D.N.Y. 2021) .................................................. 9, 11

*Taylor v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 859 A.2d 142 (D.C. 2004) ..................... 20

*White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154 (C.D. Cal. 2014) ........................................ 23

*Wuest v. My Pillow, Inc.*, 2019 WL 3577176, 2019 U.S. Dist. LEXIS 131846, at *8 (N.D. Cal. Aug. 6, 2019) ............................................................................................................. 22

*Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, 2016 U.S. Dist. LEXIS 179900 (W.D.N.Y. Dec. 29, 2016) ........................................................................................... 6, 8, 11, 12

Statutes

NYLL § 191 ............................................................................................................................. 17

NYLL § 193 ............................................................................................................................. 17

Other Authorities

Bruce A. Green & Andrew Kent, *May Class Counsel Also Represent Lead Plaintiffs?*, 72 Fla. L. Rev. 1083, 1118 (2020) ............................................................................................. 20, 21

Rules

Fed. R. Civ. P. 11 ..................................................................................................................... 18

New York Rules of Professional Conduct..........................................................................16, 19, 20

Fed. R. Civ. P. Rule 23 .................................................................................................3, 7, 16, 21

Regulations

29 CFR 785.18 ..................................................................................................................... 18

Plaintiffs, by and through their counsel, hereby seek final approval of their Joint Stipulation of Settlement and Release (the "Settlement Agreement") [97-1][1] with Defendant Trinity Packaging Corp., who does not oppose this Motion.

## I.     INTRODUCTION

Pursuant to the Court's Preliminary Approval Order, [100] the administrator (Simpluris) sent the Court-approved notices to the 64 Opt-in Plaintiffs (8 of whom are also New York Class Members), and an additional 220 persons who qualify as New York Class Members only, informing them of the Settlement Agreement, under which Defendant stood to pay a maximum of $840,000. In addition to the 56 Opt-in Plaintiffs who worked in Virginia, a total of 107 New York Class members will receive payments from the Settlement Agreement if it is approved: the 8 Opt-in Plaintiffs who worked in New York, plus the 99 New York Class members who submitted Claim Forms. No class member has objected and only one has opted out. If the settlement is approved, the Opt-in Plaintiffs will receive a total of $87,986.64 from the Opt-in Fund, and the New York Class Members will receive $267,199.89 from the Rule 23 Class Fund, for a total of $355,186.53 that will be paid exclusive of Employer Payroll Taxes (which Defendant will pay separately), Service Awards, attorneys' fees and costs, and administration fees and costs.

The parties now seek an order: (1) approving the Settlement Agreement as fair and adequate; (2) finally certifying this case as an FLSA collective action and Rule 23 class action for settlement purposes; (3) approving the proposed Service Awards (in the amount of $10,000 to each Named Plaintiff), Class Counsel's attorneys' fees ($280,000) and costs ($14,581.54), and Simpluris' settlement administration fees and costs ($7,850); and (4) dismissing the action by reason of settlement.

---

[1] Bracketed references are to CM/ECF docket entries.

## II.    BACKGROUND

On January 17, 2023, the Court granted Plaintiffs' Renewed Motion for Preliminary Approval [100], which included an extensive summary of the case's factual and procedural history and a summary of the Settlement Agreement. [97, pp. 2-10] On March 3, 2023, pursuant to the Court's preliminary approval order and the Settlement Agreement, Simpluris mailed the notice packets to the 56 Opt-in Plaintiffs who worked in Virginia and the 228 New York Class Members. *See* Ex. 1, Declaration of Mary Butler ("Butler Decl"), ¶¶ 6, 8.[2] Of the 284 notice packets mailed, 27 were returned as undeliverable. *Id.* at ¶ 9. Simpluris was able to re-mail the notice packets 22 of these Class Members to new addresses that that were found by Simpluris through various methods and only 5 notice packets were undeliverable. *Id.*

The deadline for each Class Member to submit a Claim Form, Opt-out Statement, or objection(s) was April 17, 2023. *Id.* at ¶ 10. Simpluris received 99 Claim Forms and one Opt-out Statement (all of which were timely submitted), and no objections.  *Id.* at ¶¶ 11-13. The 107 Participating Class Members (8 Opt-in Plaintiffs and 99 New York Class members who submitted Claim Forms) represent 48.63% of the New York Class members and will receive payments totaling $267,199.89, which is approximately 62.20% of the $429,581.82 that was available from the Rule 23 Class Fund. *Id.* at ¶ 16. In addition, the 64 Opt-in Plaintiffs will receive their shares of the Opt-in Fund, which will be a total of $87,986.64, allocated pursuant to the Settlement Agreement. *Id.* at ¶ 15. Subject to the Court's final approval, these amounts will be paid within approximately 30 business days from the Effective Date, at the same time as the payment of amounts approved for Service Awards and attorneys' fees and costs. *See* Settlement Agreement, §§ 3.1(A), 3.1(C), 3.2(B), 3.3(A).

---

[2] On May 20, 2022, Defendant notified the appropriate government officials of the Settlement Agreement pursuant to 28 U.S.C. § 1715(b). Declaration of Jason Brown [104] ("JB Decl."), ¶ 11.

## III.    APPROVAL OF THE SETTLEMENT UNDER RULE 23

### A.    The New York Rule 23 Class Should be Finally Certified

The Preliminary Approval Order, the Court preliminarily certified the New York Class for settlement purposes only, based on argument and evidence in the Renewed Motion for Preliminary Approval as to why the class satisfies the requirements of Rule 23(a) and (b). [97, pp. 23-28] None of the arguments or evidence supporting the other Rule 23 criteria have changed, with the potential exception of Class Counsel's actions in the *Bonura* case, discussed *infra* at pp. 14-25. *See* JB Decl., ¶ 12. Plaintiffs respectfully submit that these arguments and facts support final certification just as they supported preliminary certification. Provided the Court finds Class Counsel adequate, the evidence submitted in the Renewed Motion for Preliminary Approval is more than sufficient to grant final certification of the New York Class for settlement purposes. *Acevedo v. Workfit Med. LLC,* 187 F. Supp. 3d 370, 377-79 (W.D.N.Y. 2016) (granting final class certification for settlement purposes for the reasons set forth in preliminary approval order).

### B.    The Class Notice was Adequate

The notice given to the members of the New York Class was "the best notice practicable under the circumstances," for purposes of Rule 23(e)(2)(B). The Preliminary Approval order previously approved the form and content of the notices, and the results of the notice process, including that 99 Class Members submitted Claim Forms and only 5 out of 284 notice packets were undeliverable, demonstrate its efficacy. *See Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 51-52 (W.D.N.Y. 2018) (finding the fact that only 23 notices were undeliverable, out of 270 mailed, supported final approval of notice). The low rate of undeliverable mailings is likely partially attributable to Class Counsel keeping updated addresses for the Opt-in Plaintiffs and making sure Simpluris sent the notices to their current addresses. JB Decl. ¶ 13.

### C.     The Settlement is Fair, Reasonable, and Adequate

The Court should find that the Settlement Agreement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2).

The Named Plaintiff and Class Counsel have and will continue to adequately represent the class. As indicted in their declarations, the Named Plaintiffs have allowed the action to be filed in their names despite the reputational risk, provided information and documents, provided declarations that helped obtain conditional certification, and regularly communicated with Class Counsel. *See* Exs. 2, 3. Class Counsel's conduct in this action overwhelmingly supports a finding of adequacy and the Court's other concerns are discussed *infra.*

Class Counsel began their investigation in late April 2019 and promptly filed a detailed complaint on May 21, 2019. JB Decl. ¶ 5. Time was of the essence, since the FLSA claims of the putative collective members stood to expire under the statute of limitations if they did not timely file their consent forms. Class Counsel filed the original Motion for Conditional Certification on September 30, 2019, [17] which was followed by discussions with Defendant's counsel regarding global resolution that resulted in Defendant producing payroll data for the entire putative collective and agreeing to toll the FLSA statute of limitations, as well as two mediation sessions in which the parties did not settle, but did make progress towards the settlement ultimately reached later in the case, through discussion of the damage estimates that could be derived from the payroll data and the substantive issues in the case. *Id.* ¶ 7-9; [97, at pp. 11-13 (discussing the skill Counsel used in analyzing the potential damages based on the time and pay records)].

Although Mr. Robertson worked for Defendant in Virginia, Class Counsel's pre-filing investigation found that Defendant also operated a factory in Buffalo, New York. Class Counsel decided, in consultation with Mr. Robertson, to file the case in this District rather than in a Virginia district court, in order to avoid personal jurisdiction challenges in the event putative collective

members from New York opted in. JB Decl. ¶ 4. This happened, as Mr. Szalasny joined the case as a Named Plaintiff, which added the NYLL claims and the proposed Rule 23 class to the complaint. [24] If not for Class Counsel's diligence at the early stages of the case, this action may have never been a putative class action, let alone a certified one.

After failing to reach a settlement at the second mediation, Class Counsel prepared their Updated Motion for Conditional Certification. [43] Prevailing on the Motion required overcoming Defendant's vigorous opposition and attempts to narrow the collective and show that the time sheets it offered in its Opposition were from after it changed its rounding policy. [56] Despite the aversion to travelling due to the COVID-19 pandemic, we travelled to Buffalo for oral argument on September 30, 2020, and presented arguments that led Your Honor to conditionally certify the collective and equitably toll the statute of limitations. [62]; JB Decl. ¶¶ 6-7.

After the Court-approved notice was sent out, Class Counsel gathered information from the Opt-in Plaintiffs that had joined the case, and continued to negotiate towards the settlement that was ultimately reached. *Id.* ¶¶ 9-10. Plaintiffs served discovery, *inter alia,* targeted at adducing evidence to be used in support of such a Rule 23 motion. *Id*. Had they not done so, they may have only been able to reach a settlement on behalf of 64 Opt-in Plaintiffs, as opposed to also obtaining potential relief for the additional 220 members of the New York Class who did not opt in. The robust, detailed factual record Class Counsel was able to compile, including testimony from the Opt-in Plaintiffs and daily punch data showing the amount of time rounded, was instrumental in persuading the Court to certify the class for settlement purposes.

Further, the parties' negotiations were at arm's length at all times, as demonstrated by the assistance they received from Mediator William F. Bauer during multiple mediation sessions, the

information each side had to assess the case's potential value/exposure, and the quality of representation each side received. *Id.* ¶ 10.

The relief the New York Class stands to receive is excellent, as evidenced by the 48.63% class participation rate and .44% opt-out rate. The Renewed Motion for Preliminary Approval explained that the Rule 23 Class Fund provided the New York Class with at least approximately 87% of the unpaid wages they could recover based on 8.3 minutes per day, which is a reasonable benchmark given the timeclock summaries of Opt-in Plaintiffs filed herewith, which show that their clocked-in time exceeded their paid time by approximately 3 to 12 minutes per day. [97, at pp. 6-7]; JB Decl. ¶ 16.  Those figures assumed that the maximum of $35,000 in costs would be deducted from the Gross Settlement Amount, leaving $412,634.50 for the New York Class Fund. But since Class Counsel is only seeking reimbursement of $14,581.54 in costs, the New York Class Fund now stands to be at least $429,581.82, which increases the rate of return from 87% to 90%, an excellent result considering the risks of prevailing at trial and overcoming Trinity's defenses to liability (e.g. integral/indispensable, and lack of knowledge by management) and to class certification (e.g. unmanageability and predominance), which were thoroughly discussed in the Renewed Motion for Preliminary Approval. *Id.* ¶ 16; [97, at pp. 14-18].

Both the participation rate and the minutes-per-day recovered compare favorably to other approved settlements. *See Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, 2016 U.S. Dist. LEXIS 179900, at *5 (W.D.N.Y. Dec. 29, 2016) (finding a 43% claims rate "extraordinary"); *Acevedo,* 187 F. Supp. 3d at 380 (finding "high participation rate" in a wage-and-hour class settlement in 251 class members submitted claim forms, comprising 21% of the class, and only 12 persons opted out); *McKnight v. Erico Int'l Corp.*, 2023 WL 2003276, 2023 U.S. Dist. LEXIS 25981, at *37 (N.D. Ohio Feb. 8, 2023) (approving class settlement in rounding case that provided

class members with pay for 7.95 minutes per workday, and represented 32% to 53% of their alleged damages); *Elston v. Horizon Glob. Ams*., 2020 WL 6318660, 2020 U.S. Dist. LEXIS 200494, at *16-18 (D. Kan. Oct. 28, 2020) (approving recovery of 3.94 minutes per day in a rounding case).

The remaining Rule 23(e)(2)(C) factors also support final approval. The proposed method for distributing payments is effective and the claims process is not burdensome, as demonstrated by the low rate of undelivered notices and the high claims rate. Attorneys' fees will be paid at the same time as payments to the Participating Class Members in an amount approved by the Court. Other than the Settlement Agreement, no other agreements have been made in connection therewith. JB Decl. ¶ 24. Finally, the Settlement Agreement treats all New York Class members equitably, as the amount of all payments they receive will be determined on a *pro-rata* basis based on the number of workweeks each Class Member worked during the relevant time period, a methodology that is consistently approved in wage-and-hour cases. *See Buchanan v. Pay-O-Matic Check Cashing Corp*., 2020 WL 8642081, 2020 U.S. Dist. LEXIS 188658, at *26 (E.D.N.Y. Oct. 8, 2020); *McKnight*, 2023 WL 2003276, 2023 U.S. Dist. LEXIS 25981, at *29-31. While Mr. Szalasny also stands to receive a Service Award, this is reasonable, as discussed in section V.

**D.    The Settlement is Procedurally and Substantively Fair**

Courts in this district assess whether proposed settlements are both procedurally and substantively fair. *See Godson*, 328 F.R.D. at 52-59. The Settlement is procedurally fair because it was negotiated at arm's length by experienced, capable counsel with the assistance of a mediator and with the benefit of time and payroll records as well as information received directly from the Opt-in Plaintiffs. JB Decl. ¶ 10.

The Settlement Agreement is also substantively fair under the factors from *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and

the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

While each of these factors was addressed in the Renewed Motion for Preliminary Approval [97, at p. 21-23], several factors in particular warrant approval at this stage. Factor 2, the reaction by the class, strongly supports approval, based on the 48.63% class participation rate and .44% opt-out rate, and the absence of objections. *Zink*, 2016 WL 7473278, 2016 U.S. Dist. LEXIS 179900, at \*4-5 (placing particular weight on factor 2 and finding that 43% claim rate supported approval). Factors 8 and 9 strongly support approval because the Rule 23 Class Fund stands to be at least approximately 90% of the unpaid overtime and straight-time wages the New York Class could recover based on 8.3 minutes of unpaid work per day, which compares favorably to the minutes-per-day and discount rates underlying settlements that have been approved in other cases.

Factor 1 supports approval because "FLSA and class action cases can be complex and expensive to litigate, often requiring protracted periods of litigation." *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 228 (W.D.N.Y. 2017). Factor 3 supports approval because Class Counsel's negotiations were based on significant information, including payroll records for the putative class and speaking with Opt-in Plaintiffs. JB Decl. ¶ 10; *Acevedo*, 187 F. Supp. 3d at 380 (finding factor 3 satisfied based on parties' exchange of significant amount of data, including time and payroll records). Factors 4-6 support approval given defenses to liability (e.g. integral/indispensable, and lack of knowledge by management) and to class certification (e.g. unmanageability and predominance), which were discussed in detail in the Renewed Motion for

Preliminary Approval. [97, at pp. 14-18] Even if Trinity is capable of withstanding a greater judgment, factor 7 should be given minimal weight. *Cunningham*, 290 F. Supp. 3d at 229.

## IV.    APPROVAL OF THE SETTLEMENT UNDER THE FLSA

Plaintiffs also request that the Court make a final determination that the Opt-in Plaintiffs are "similarly situated" for purposes of the FLSA, and that the Settlement Agreement is a fair and reasonable compromise of issues that we subject to a *bona fide* dispute. *See Stock v. Xerox Corp*., 516 F. Supp. 3d 308, 314 (W.D.N.Y. 2021).

A final determination that the Opt-in Plaintiffs are "similarly-situated" is warranted based on the same facts and arguments offered in support of class certification [97, pp. 23-28], and on the 14 declarations from Plaintiffs/Opt-in Plaintiffs, which show that Opt-in Plaintiffs are similarly situated despite working at different locations (Rocky Mount, Virginia, or Buffalo, New York) and holding different job titles. *See Cunningham*, 290 F. Supp. 3d at 229 (finding final collective certification proper based on substantially the same reasons supporting final class certification). The fairness of the settlement to the Opt-in Plaintiffs is supported by the same rationale supporting the adequacy of the relief provided under the Settlement Agreement under Rule 23 and the *Grinnell* factors, given that the Opt-in Plaintiffs stand to receive slightly more than 100% of their actual *and liquidated damages* they could potentially recover under the FLSA based on 8.3 minutes per day. JB Decl. ¶ 16. While the Opt-in Plaintiffs' recovery at trial does not depend on class certification under Rule 23, Trinity's defenses to liability are just as applicable under the FLSA as the NYLL. This Settlement is a fair and reasonable compromise and should be approved.

## V.    APPROVAL OF THE PROPOSED SERVICE AWARDS

Granting service awards to class representatives is within the discretion of the Court. *Cunningham*, 290 F. Supp. 3d at 233-34 (W.D.N.Y. 2017) (citing *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005)). In determining the amount of such an award that is

reasonable in any given case, courts consider: the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting' in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims and of course, the ultimate recovery. *Id.*

Each of the two Named Plaintiffs has provided a declaration justifying the approval of his proposed $10,000 Service Award. *See* Exs. 2 and 3 ("Robertson Decl." and "Szalasny Decl."). Mr. Robertson and Mr. Szalasny each agreed to serve as a Named Plaintiff, with the understanding that this would result in a public record of the lawsuit that would include their names, potentially making this case discoverable to anybody who searches on the internet for them and/or their former employment with Trinity. *See* Robertson Decl. ¶ 8, Szalasny Decl., ¶ 9.

Further, both Plaintiffs have devoted significant time and effort to the case by providing information (as well as documents, in the case of Mr. Robertson), reviewing and signing declarations that were used in support of their successful conditional certification motion, discussing and remaining available for the mediation session(s), and regularly communicating and maintaining in contact with Class Counsel. *See* Robertson Decl. ¶¶ 7, 9, 13-14, Szalasny Decl., ¶¶ 8, 10, 13-14. Named Plaintiffs were responsive, ready and willing at all times willing to assist, including Mr. Robertson who was willing throughout the case to travel from his home in Virginia to New York to attend any proceeding. *See* Robertson Decl. ¶¶ 11-12, Szalasny Decl., ¶ 12.

The Service Awards are further supported by that fact that each Named Plaintiff has agreed to be bound by a general release in partial consideration therefore, *see Bondi v. DeFalco,* 2020 WL 2476006, 2020 U.S. Dist. LEXIS 84701, at *15-16 (S.D.N.Y. May 13, 2020) (finding at

preliminary approval stage that class representative's agreement to general release in exchange for service awards was reasonable),[3] and the $20,000 in combined proposed Service Awards amounts to only 2.38% of the $840,000 Gross Settlement Amount. *See Stock*, 516 F. Supp. 3d at 314 (W.D.N.Y. 2021) (approving service awards in collective action settlement of $20,000 and $10,000, respectively, in part because they comprised less than 2.5% of the settlement fund). Accordingly, the proposed Service Awards should be approved. *See Cunningham*, 290 F. Supp. 3d at 233-34 (approving serve payments ranging from $7,500 to $10,000 based on similar facts); *Frank*, 228 F.R.D. at 187-88 (approving $ 10,523.37 incentive payment based on similar facts).

## VI.   APPROVAL OF THE PROPOSED FEES AND COSTS

Plaintiffs respectfully request approval of the proposed attorneys' fees of $280,000, which represent 1/3 of the $840,000 Gross Settlement Amount. As Your Honor stated in *Zink*,

> In determining a reasonable fee, the Court is free to rely on a percentage of recovery determination, and/or to employ the lodestar method (multiplying the attorneys' billable hours by their reasonable billable rate). However, the recent trend in the Second Circuit has been to apply the percentage-of-recovery method and loosely use the lodestar method as a baseline or cross check. Factors relevant to a determination of the reasonable fee under both the lodestar and percentage of recovery methods include: (1) the time and labor expended by counsel; (2) the size and complexity of the matter; (3) the risks involved in the litigation; (4) the quality of representation; (5) the relationship between the requested fee and the settlement; and (6) considerations of public policy.

*Zink*, 2016 WL 7473278, 2016 U.S. Dist. LEXIS 179900, at *13 (internal citations and quotations omitted) (citing *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000)); *Acevedo*, 187 F. Supp. 3d 370, 382-83 (applying same framework to review of attorneys' fees in a wage-and-hour collective and class settlement).

---

[3] The *Bondi* court subsequently granted final approval of the settlement, including the proposed service awards. *See* September 16, 2020 Order 21 (Dkt. No. 1531 (17-cv-05681)). *See* Ex. 4.

In *Zink*, Your Honor opined that when applying the percentage-of-the-fund method, Courts should assess the proportion of the fees to the total settlement amount, even in a claims-made settlement like the one here, where less than the entire $840,000 Gross Settlement Amount will be paid out due to some New York Class members not submitting Claim Forms. *Zink*, 2016 WL 7473278, 2016 U.S. Dist. LEXIS 179900, at *16-21. Plaintiffs respectfully submit that the same rationale applies here, especially given the 48.63% class participation rate. *See Acevedo*, 187 F. Supp. 3d at 382 (approving fee of 1/3 of the total available settlement fund in a claims-based wage-and-hour class settlement); *Chambery v. Tuxedo Junction Inc*., 2014 WL 3725157, 2014 U.S. Dist. LEXIS 101939, at *21-26 (W.D.N.Y. July 25, 2014) (same).

The lodestar crosscheck also supports the reasonableness of the proposed attorneys' fees, as Class Counsel has prepared a calculation based on their itemized time entries (which total to 1,013.7 hours,  multiplied by rates consistent with those that have been approved in other wage-and-hour cases in this District. JB Decl. ¶ 26, Ex. 2 (Brown LLC's itemized billing records); *Taylor v. Delta-Sonic Car Wash Sys*., 2017 WL 436045, 2017 U.S. Dist. LEXIS 14394, at *24-26 (W.D.N.Y. Jan. 31, 2017) ("The hourly rates generally allowed in this District for a case such as this are in the range of $225-$250 for partner time or senior associate time, $150-$175 for junior associate time, and $75 for paralegal time."). The calculation yields a lodestar of $197,545, of which the proposed $280,000 in attorneys' fees represent a 1.42 multiplier, which is within the range of multipliers that have been approved in similar cases. *See Cunningham*, 290 F. Supp. 3d at 232 (approving multiplier of 2.84 as "within the range of multipliers accepted by courts in this district" and collecting cases).

The requested fees are also reasonable under the *Goldberger* factors. First, Class Counsel has expended over 1,000 hours in this case. JB Decl. ¶ 25. This was a complex class action brought

under federal and state law, which involved multiple legal and factual questions as well as potential defenses by Trinity. Despite these risks, Class Counsel took the case on a contingency fee basis, JB Decl. ¶ 3 and "therefore ran the risk of recovering no fees at all." *Acevedo*, 187 F. Supp. 3d at 383.

Class Counsel has substantial experience litigating wage and hour class and collective actions, *see* [98-1] Firm Resume, which led to a settlement that compares favorably to other FLSA settlements in amount of recovery and participation rate.  Plaintiffs' "request for one-third of the entire settlement fund is reasonable." *Acevedo*, 187 F. Supp. 3d at 383. Finally, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 597-98 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, (1992)). This factor strongly supports approval because all collective and class members have had the opportunity to submit consent forms and/or Claim Forms (which a substantial number of them have done), and the Settlement Agreement, if approved, will provide each participating employee with monetary recovery that is more than fair in light of their potential damages and the defenses they face.

The Court should also approve the payment of litigation costs of up to $14,581.54, of which $98.05 represents costs anticipated to be incurred in connection with travel to the Final Approval Hearing, and settlement administration costs of $7,850, from the settlement fund. JB Decl. ¶¶ 27-28, Ex. 3 (Brown, LLC's breakdown of costs); Butler Decl., at ¶ 18. These costs are reasonable and in line with the costs awarded in similar FLSA cases. *See Acevedo*, 187 F. Supp. 3d at 383-84 (approving $8,419.70 in litigation costs and $27,500.00 in administrative costs); *Fisher*, 948 F.3d at 601 (finding that "court reporting and service of process fees, filing fees, hotels and

transportation, . . . and working meals . . .   appear[ed] to be reasonable, incidental, and necessary to the representation" of plaintiff in FSLA case).

## VII.    CLASS COUNSEL'S ACTIONS IN THE *BONURA* CASE

Your Honor has inquired [101] about Class Counsel's actions in the separate and unrelated case *Bonura v. UHL Ventures LLC*, 1:22-cv-395, based on the concerns Your Honor expressed in the Report and Recommendation issued in that case on March 9, 2023, *see* Ex. 5 ("*Bonura* R&R"), which was adopted by District Judge Sinatra as to its recommendation on April 10, 2023, denying the plaintiffs' Motion for Settlement Approval. *see* Ex. 6. As explained herein, Class Counsel did not engage in any conduct in *Bonura* that was unethical or otherwise negates our adequacy to represent the class and collective in the instant case, especially given that the Settlement Agreement here provides for global relief to the Opt-in Plaintiffs and New York Class members, and thus is incongruent with concerns regarding potential abandonment of the collective and class in *Bonura*.

### A.    Class Counsel Did Not Behave Unethically in *Bonura*

In the *Bonura* R&R, while Your Honor was critical of Class Counsel for seeking individual settlements, we took the Court's criticisms to heart and hope to address them through this brief and our continued work in *Bonura*. *Bonura*, 1:22-cv-395, ECF 37, at 1-2. After reviewing the Court's April 14 Order in *Trinity*, in which the Court raised the specter of ethics for the first time, Class Counsel at our own expense engaged an ethicist to independently review our conduct and he did not find "any ethical lapses." *See* JB Decl., Ex. 4 ("Hans Opinion"), p. 2. To disqualify Class Counsel at this stage would require a finding of egregious ethical violation as explained herein, and there is no misconduct in the instant matter, and no ethical breach in *Bonura*, let alone an egregious one.

Class Counsel is not attempting to relitigate the *Bonura* denial, but we hope to address the Court's concerns, provide additional context and information and illustrate that our conduct is well within the acceptable range. The *Bonura* action was not filed as a class action for an improper purpose. JB Decl. ¶ 30, Ex. 5 ("*Bonura* Complaint"). Upon filing and continuing through the present, all factual contentions in the *Bonura* Complaint have had evidentiary support, and all legal contentions have had sufficient merit. The complaint was thus compliant with Fed. R. Civ. P. 11 (and indeed, the *Bonura* defendants have not raised Rule 11 concerns, formally or informally). *Id.* ¶ 31. The genuineness of the asserted interest for the putative class and collective members in *Bonura* is evident from, among other things: counsel's negotiation of an agreement to toll the statute of limitations for the collective for four months; informing them (upon inquiry) of their rights to join the lawsuit (resulting in the filing of consent forms by Opt-in Plaintiffs Ms. Knight and Mr. Meredith); serving discovery requests aimed at obtaining evidence to support motions for collective and class certification; and reviewing payroll records for putative collective/class members. *Id.* Counsel is currently trying to negotiate a revised settlement that addresses the concerns expressed in the R&R (although the outcome is still uncertain). *Id.* ¶ 40.

Developments after the filing of the *Bonura* Complaint resulted in a starker contrast than anticipated between the merits of early, individual settlement versus pursuing collective and class certification. *Id.* ¶ 32. The *Bonura* defendants behaved in a manner that made us question their ability to withstand prolonged litigation, including dilatory behavior in the early phases by failing to file a timely answer, not appearing at the Rule 16 conference, and taking an excessive amount of time to produce requested records. *Id.* Once produced, the payroll records supported the *Bonura* defendants' post-filing representations that the break-deduction policy alleged in the complaint was only in effect from February 17, 2020 to December 5, 2021 and that the putative class was

small enough as to raise doubts about whether Rule 23(a)'s numerosity requirement could be satisfied.[4] *Id*. Coupled with the *Bonura* defendants' dilatory conduct, the small size of the workforce gave us concern that protracted litigation would exhaust the *Bonura* defendants' resources (thus diminishing the pool of funds available and potentially bankrupt the *Bonura* defendants which is not a desired result). There was also concern that conditional certification would not have resulted in any additional opt- ins, aside from the two opt-in plaintiffs that had joined in the first four month of the case, one of whom subsequently withdrew. *Id*; *see*, *e.g*., *Gutierrez-Bejar v. SOS Int'l, LLC*, 2019 WL 5683901, 2019 U.S. Dist. LEXIS 190326, at *23 (C.D. Cal. Nov. 1, 2019) (14.2% opt-in rate "typical" in FLSA cases).

When the possibility arose of settling on behalf of the named Plaintiff and opt-ins, we had a duty to discuss that possibility with our clients and to abide by the decision each of them made. *See* Rule 1.2(a) of the New York Rules of Professional Conduct ("NYRPC"). Mr. Bonura and Ms. Knight decided to settle their claims individually, and Mr. Meredith decided to withdraw from the case, and we were ethically bound to honor each of those decisions. JB Decl. ¶ 36.

Class Counsel's conduct was within the acceptable range in these circumstances and consistent with our ethical obligations. Indeed, collective and class actions regularly settle on an individual basis, *see* Ex. 7, 2023 Carlton Fields Class Action Survey, p. 23 ("On average, 46.2% of class action settlements were on an individual basis in 2022, up from 37.8% last year, and in-line with prior years. This may have resulted from the higher number of labor and employment class actions that companies faced in 2022, as those matters can sometimes be settled on an individual basis, depending on the allegations."), many of which have been approved under *Cheeks*

---

[4] *See, e.g., Martinenko v. 212 Steakhouse, Inc*., 2023 WL 2919559, 2023 U.S. Dist. LEXIS 64562, at *10-11 (S.D.N.Y. Apr. 12, 2023) ("[P]rospective classes of twenty to forty members fall in a 'gray area.'" (internal citations omitted)).

*v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For example in *Fisher*, 948 F.3d at 597-98, neither the District Court (which had approved the settlement in all respects other than attorneys' fees) nor the Second Circuit (which only took issue with the District Court's ruling on attorneys' fees) made any suggestion that the plaintiff or counsel acted inconsistently with *Cheeks*, Rule 23, any ethics rules, or any other standard of conduct by settling the case on an individual basis, notwithstanding the fact that *Fisher* was also pled as a collective and class action.

Class Counsel had a basis in *Bonura* to assert claims under NYLL §§ 191 and 193 (Counts III and IV). *Brown v. S. Nassau Cmtys. Hosp.*, 2019 NY Slip Op 32239(U), ¶¶ 3-5 (Sup. Ct.) and *Gordon v. Kaleida Health*, 299 F.R.D. 380, 390-91 (W.D.N.Y. 2014), cited in the approval motion, appear to have led the Court to question our decision to assert those claims. However, *Brown* and *Gordon* predated the New York "No Wage Theft Loophole Act," which amended § 193 to clarify that "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." 2021 N.Y. Laws ch. 397 § 1; NYLL § 193(5).[5] While the *Brown* court rejected claims brought under NYLL § 191(1)(d) for the failure to allege that the plaintiffs were not paid timely in accordance with their agreed terms of employment, in *Bonura* the claims are asserted under NYLL § 191(a)(i), which applies to "manual workers" and unlike § 191(1)(d) (which applies to "clerical and other workers") does not contain the "agreed terms of employment" element that was not satisfied in *Brown*. Class Counsel sees nothing in the plain language of NYLL §§ 191(a)(i) or 193 (or any binding interpretations thereof) indicating they are inapplicable to claims based on unpaid 15-minute rest periods. Thus, these claims were brought in good faith and

---

[5] The amendment became effective in August 2021, before Mr. Bonura stopped working for Defendants (in October 2021) and while he was still victimized by the deduction policy (which continued until December 5, 2021). *See Bonura* Complaint, ¶ 9.

are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). JB Decl. ¶ 30.

### B.   Class Counsel Did Not Breach Any Ethical Duties to Their Clients

Class Counsel's actions in negotiating the proposed settlement agreements in *Bonura* did not breach any ethical obligations to our clients, who at the time of the negotiations, were Mr. Bonura, Ms. Knight, and Mr. Meredith. *See* JB Decl. ¶ 29; Hans Opinion, at pp. 1-2. The proposed settlements would have provided Mr. Bonura and Ms. Knight with amounts they each authorized in advance, which represented close to their estimated maximum potential recoveries.[6]

Counsel adequately researched the deduction claim before reaching the settlement, and has general familiarity with 29 CFR 785.18 (which was cited in the *Bonura* Complaint, at ¶¶ 3, 61). The December 28, 2022 time entry referenced in the *Bonura* R&R, at p. 4, was for compiling potentially adverse authorities to show that the break-deduction claim was subject to a *bona fide* dispute. JB Decl. ¶ 41. Likewise, counsel was aware that Mr. Bonura had left the *Bonura* defendants' employ before the case was filed, *see Bonura* Complaint ¶ 9, but then confirmed that he had not *resumed* his employment, since non-employment is a factor supporting approval of the proposed mutual general release (which at that point, was still being negotiated). JB Decl. ¶ 42.[7]

---

[6] The *Bonura* Approval Motion provided specific estimates of the damages potentially recoverable by Mr. Bonura and Ms. Knight, that Class Counsel had prepared based on their payroll records. *See* JB Decl., ¶ 38, Ex. 6 (damage estimate). Mr. Bonura was estimated to be owed $5,460.43 in total damages under the FLSA and $514.50 in unpaid wages for non-overtime work under the NYLL (pursuant to NYLL §§ 191 and/or 193), plus liquidated damages, *Bonura*, 1:22-cv-395, ECF 29 at 3, which brought the total estimate to $6,489.43, of which his proposed recovery of $6,000 represented 92%. Similarly, Ms. Knight was estimated to be owed $ 133.31 in total damages under the FLSA and $36.25 in unpaid wages for non-overtime work under the NYLL, plus liquidated damages, *id.*, which brought the total estimate to $ 205.81, of which her proposed recovery of $200 represented 97%.

[7] Even if Mr. Bonura had become re-employed (which he did not), it would not have impacted the estimate of his maximum potential damages, because the *Bonura* defendants stopped deducting 15-minute rest breaks from technicians' pay on December 5, 2021.

Further, the proposed payments of attorneys' fees and costs in the settlement agreements did not violate NYRPC 1.5, which provides that "a lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense…."  Class Counsel respectfully submits that the proposed $10,003.54 in attorneys' fees was not excessive under the NYRPC 1.5(a) criteria, primarily in light of the fact that Mr. Bonura and Ms. Knight would have recovered close to their estimated maximum damages, *Fisher*, 948 F.3d 607 (finding that plaintiff's receipt of full individual damages would weigh in favor of the 'degree of success' factor, notwithstanding that case was pled as collective and class action), and counsel expended substantial time and labor to achieve that result, as reflected in the time records supported with the *Bonura* Approval Motion. (showing 108.6 hours of work). Finally, it was not improper to request that the proposed attorneys' fees and costs be allocated evenly between the settlement agreements of Mr. Bonura and Ms. Knight, because counsel's time benefitted them to the same or a similar extent, i.e. a recovery of close to their estimated maximum potential damages.

   **C.   Class Counsel Did Not Breach any Fiduciary Duties to the Putative Collective and Class Members**

Class Counsel did not behave unethically or otherwise prejudicially to any putative class members by negotiating individual settlements on behalf of Mr. Bonura and Ms. Knight before moving for class certification.

There is no provision in the NYRPC that directly addresses what duties, if any, attorneys have to putative class members at the pre-certification stage. A thorough analysis of the issue is found in *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, 2014 U.S. Dist. LEXIS 137254 (S.D.N.Y. Sept. 26, 2014), in which counsel was found inadequate under Rule 23 in part because he had failed to communicate an individual settlement offer to the named plaintiff he represented in a class action that had not yet been certified. *Id.*, at *9. The *Kulig* court held that the attorney

19

was ethically required under NYRCP 1.2(a) to abide by the named plaintiff's decision regarding whether to accept an individual settlement offer, and rejected the argument that the case's status as a putative class action made this requirement inapplicable. *Id.,* at *12-13; *see also* Hans Opinion, p. 1 ("[Y]our fiduciary duty is only to your clients. You do not have any duty, despite the pleadings, to any other person(s) unless and until the class is certified under F.R.C.P. 23 and/or you are retained by an additional client.").

Likewise, "[t]here is no definitive statement to be found about duties to a nascent class in either FRCP Rule 23, its caselaw, or the ABA Model Rules." Bruce A. Green & Andrew Kent, *May Class Counsel Also Represent Lead Plaintiffs?*, 72 Fla. L. Rev. 1083, 1118 (2020). Some courts have found that counsel owe no duty to putative class members before certification. *See Schick v. Berg*, 430 F.3d 112, 116-17 (2d Cir. 2005) ("[U]nder Texas law, counsel for a class does not, prior to certification of the class, owe a fiduciary duty to unnamed class members simply by virtue of their membership in the class."); *Formento v. Joyce*, 168 Ill. App. 3d 429, 437, 118 Ill. Dec. 857, 862, 522 N.E.2d 312, 317 (1988) ("The act of originally filing a cause of action as a class action suit, without more, cannot be said to clearly indicate an intent to benefit the unnamed members of the purported class. As such, defendants in this case owed no duty to plaintiffs."); *accord Taylor v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 859 A.2d 142, 149 (D.C. 2004). While other courts have found that counsel owes a limited fiduciary duty to putative class members before certification, no authority indicates that such duties supersede a lawyer's ethical obligation under NYRPC 1.2(a) to abide by the settlement decisions of their clients.

Some courts hold that, at the pre-certification stage, class counsel should not prejudice the substantive rights of the putative class members with respect to the claims at issue. *See Schick v. Berg*, 2004 WL 856298, 2004 U.S. Dist. LEXIS 6842, at *8 (S.D.N.Y. Apr. 20, 2004), *aff'd*, 430

F.3d 112 (2d Cir. 2005); *House v. Akorn, Inc.*, 2018 WL 4579781, 2018 U.S. Dist. LEXIS 163924, at *6-7 (N.D. Ill. Sep. 25, 2018); Green & Kent, at 1120-1121. In *Bonura*, the individual settlements, had they been approved, would not have had any binding or preclusive effect on the ability of putative class members to file their own lawsuits, and thus could not have prejudiced their substantive rights.

The above-cited authorities are also consistent with the legislative intent behind the 2003 amendments to Rule 23. The 2003 Advisory Committee Notes to Rule 23(g)(2) state: "Whether or not formally designated interim counsel, an attorney who acts *on behalf of the class* before certification must act in the best interests of the class as a whole" (emphasis added). While Class Counsel pursued numerous benefits for the *Bonura* class during the course of the litigation as discussed *supra*, Class Counsel was *not* acting on behalf of the class when negotiating the individual settlements in *Bonura*. Rule 23 thus does not require Class Counsel to choose between their individual clients and the putative class prior to class certification. Rule 23 subsection (e) was amended in 2003 to not require court approval of "settlements with putative class representatives that resolved only individual claims" and "requires approval only if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1)(A) Advisory Committee Notes to 2003 Amendments (internal citation omitted).

Class Counsel's representation in the proposed *Bonura* settlements that they did not, at that time, "represent any other current or former employees" of the *Bonura* defendants also did not prejudice the rights of putative class members or otherwise violate any ethical rules. This was not a pledge to abstain from representing other employees either at the time of the settlement negotiations in *Bonura* or in the future, and would not have been used as a basis to decline to represent other putative class members or to otherwise restrain on our practice, and thus did not

violate NYRPC 5.6(a)(2) (prohibiting an attorney from making an agreement to restrict his or her right to practice). *See Desantis v. Snap-On Tools Co., LLC*, 2006 WL 3068584, 2006 U.S. Dist. LEXIS 78362, at *34 (D.N.J. Oct. 27, 2006) (holding that a provision in a settlement agreement that class counsel had "no present intention of representing any persons who are not Class Members" was not a restriction on their right to practice).

Unlike in *Wuest v. My Pillow, Inc*., 2019 WL 3577176, 2019 U.S. Dist. LEXIS 131846, at *8 (N.D. Cal. Aug. 6, 2019), in *Bonura* there was no use of a threat of a class action to extract undeserved premiums on individual claims. Mr. Bonura and Ms. Knight would have recovered 92% and 97% of their respective estimated potential damages, and the proposed attorneys' fees represented a reduced percentage of the lodestar that was at least plausibly consistent with counsel's expenditure of time and degree of success, even if the Court disagreed with the amount. In *Wuest*, by contrast, the court criticized a settlement in which the plaintiff received twice the maximum potential recovery, plus $70,000 in attorneys' fees despite the claims not arising under fee-shifting statutes (unlike the FLSA and NYLL claims in *Bonura*).

Finally, Class Counsel knows of no authority that suggests that we had a fiduciary duty to move for certification of the collective under the FLSA. *See Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1083-85 (S.D. Iowa 2007) ("Given that the reasoning for finding that class counsel owe a fiduciary duty to putative class members prior to class certification is inapplicable in the context of 'opt-in' collective actions, the Court concludes that Plaintiffs' counsel have not assumed responsibility for representing the putative collective members.").

### D.   Class Counsel's Conduct in *Bonura* Does Not Negate Their Showing of Adequacy Here

"Major ethical violation[s]" which "demonstrate a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" can be grounds for disqualifying class

counsel and denying class certification. *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (internal quotation marks omitted). "Case law preceding this standard suggests that the degree of unethical conduct justifying a finding of inadequacy is high, and often turns on counsel's integrity and candor." *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1171-72 (C.D. Cal. 2014) (collecting cases). But where there is no identifiable violation of a state ethics rule, courts have declined to find class counsel inadequate. *See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 279 F.R.D. 90, 108 (E.D.N.Y. 2012) (finding denial of class certification unwarranted, despite defendants' accusations that class counsel had solicited a named plaintiff for the class action giving rise to "lawyer-driven litigation," because the solicitation at issue did not violate any state's ethical rules). "[N]ot every misstep by counsel warrants denial of class certification. It is thus necessary to evaluate the seriousness of the conduct and the possibility of prejudice to the class." *Kulig*, 2014 WL 5017817, 2014 U.S. Dist. LEXIS 137254, at *8.

The Second Circuit disfavors disqualification of class counsel because "often only the attorneys who have represented the class, rather than any of the class members themselves, have substantial familiarity with the prior proceedings, the fruits of discovery, [and] the actual potential of the litigation. And when an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution." *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986). Thus, "[i]n considering whether to remove class counsel for any reason, the district court 'must consider as well the costs to the class members of requiring that they obtain new counsel, taking into account such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the

litigation, and the time that would be needed for new counsel to familiarize himself [or herself] with all that has gone before.'" *Allen v. Dairy Farmers of Am.*, 2015 U.S. Dist. LEXIS 196784, at *13 (D. Vt. June 30, 2015) (quoting *Agent Orange*, 800 F.2d at 19). Further, "'there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute.'" *Id*.

Here, Class Counsel has not committed any ethical violations at all, either in *Bonura* or in the present action, let alone a violation so egregious as to negate the Court's prior finding of adequacy. Even if the Court believes there were some fiduciary duties to the absent class members in *Bonura*, those duties were satisfied by not prejudicing their rights. Further, there is no concern for any breach of fiduciary duty or prejudice to collective or class members in this case, because unlike *Bonura*, here Class Counsel has successfully moved for conditional collective certification and preliminary class certification under Rule 23 and negotiated a settlement that was well received by the Opt-in Plaintiffs and Participating Class Members.

Further, while either Mr. Brown or Mr. Conlon can adequately serve as class counsel on his own, a finding that both are inadequate[8] would leave the class without counsel, thus necessitating an inquiry into the *Agent Orange* factors, which weigh strongly against removal of Class Counsel here given the length of time for which this action has been pending, the amount of information Class Counsel has learned, the complexity of the issues, and the overwhelming indication from the class members that they are pleased with the proposed settlement and with the work Class Counsel has performed to achieve it.

---

[8] Mr. Brown was the only counsel of record in *Bonura* and delegated certain tasks to a former associate. Mr. Conlon had little involvement in the case until after the proposed settlements had been reached in principle, at which point he assisted with drafting and revising the long-form settlement agreements and the motion for settlement approval. JB Decl. ¶ 46.

Finally, it is not uncommon for a Court to deny preliminary approval and for counsel to then work to address the concerns of the Court, since at the approval stage is the first time the court weighs in on the potential resolution. It happened in this case when the Court denied the original Motion for Preliminary Approval [88, 89], and it is happening again in *Bonura*.

Since 1996, Mr. Brown has had the honor and pleasure of serving as a lawyer, formerly working as a Law Clerk to a New Jersey Superior Court Judge, a Special Agent and Legal Advisor for the Federal Bureau of Investigation ("FBI") before moving to private practice. He has been appointed Class Counsel in many cases over the years and has had an unblemished record to date – no Court has ever found his representation inadequate. JB Decl. ¶ 45. This Court should not draw final conclusions from *Bonura* until that case reaches a final disposition. Although the Court had strong critiques about the proposed settlements in *Bonura,* the Court did not cite to any specific ethical lapse, and indeed a fair analysis of the case law and the NYRPC shows that there was none, a conclusion also supported by the Hans Opinion. There was no ethical misconduct so egregious as to require disqualification of Class Counsel. Counsel reiterates that we have taken the Court's concerns to heart, and we humbly ask the Court to find that the concerns raised in its April 14, 2023 Order [101] have been alleviated and find Class Counsel adequate.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted in its entirety, so that the Opt-in Plaintiff and Participating Class Members can receive the substantial monetary relief that has been achieved through the efforts of the Named Plaintiffs and Class Counsel.

Respectfully Submitted,

Dated: June 5, 2023          By:  ___*/s/ Jason T. Brown*___
Jason T. Brown
Nicholas Conlon (*admitted pro hac vice*)
BROWN, LLC

111 Town Square Pl, Suite 400
Jersey City, NJ 07310
TEL: (877) 561-0000
FAX: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The Undersigned certifies that on June 5, 2023, the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's system.

By:       */s/ Jason T. Brown*     
                    Jason T. Brown