UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLAUDE ROBERTSON, and                                    **FINAL APPROVAL ORDER**
JOHN SZALASNY, individually and on behalf of                          **and**
  others similarly situated,                                                      **JUDGMENT**

                                             Plaintiffs,              **19-CV-659-JLS-LGF**

                        v.

TRINITY PACKAGING CORPORATION,

                                             Defendant.
_____

APPEARANCES:            JTB LAW GROUP LLC
                        Attorneys for Plaintiffs
                        JASON T. BROWN, of Counsel
                        140A Metro Park
                        Rochester, New York  14623

                        BROWN, LLC
                        Attorneys for Plaintiffs
                        NICHOLAS S. COLON, and
                        PATRICK S. ALMONRODE, of Counsel
                        111 Town Square Place
                        Suite 400
                        Jersey City, New Jersey  07310

                        NIXON PEABODY LLP
                        Attorneys for Defendant
                        VINCENT E. POLSINELLI, and
                        CHRISTOPHER J. STEVEN, of Counsel
                        677 Broadway
                        10th Floor
                        Albany, New York  12207


## JURISDICTION and BACKGROUND

In this hybrid collective/class wage-and-hours action commenced May 21, 2019,

pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FSLA" or "the Act"),

and New York Labor Law §§ 190 *et seq.* and 650 *et seq*., as well as 12 N.Y.C.R.R.

§142-1.1 *et seq*. ("NYLL"), Plaintiffs Claude Robertson ("Robertson") and John Szalasny ("Szalasny") (together, "Named Plaintiffs") allege Defendant Trinity Packaging Corporation ("Defendant" or "Trinity") maintained a "non-neutral rounding policy" in which time spent performing tasks both pre- and post-shift was always rounded down resulting in a failure to pay hourly workers for all time worked in excess of forty (40) hours in a workweek.  Trinity, a manufacturer and marketer of plastic packaging products, heavy duty industrial films, specialty films, and lamination products, operates plants in Buffalo, New York ("Buffalo plant") and Rocky Mount, Virginia ("Virginia plant"). On December 27, 2019, Plaintiffs filed an amended complaint (Dkt. 24) ("Amended Complaint").  Named Plaintiffs assert their FLSA claims on a collective basis pursuant to 29 U.S.C. §216(b) on behalf of similarly situated workers who worked for Defendant in New York or Virginia ("Opt-in Plaintiffs"), and the NYLL claims are asserted by Szalasny on behalf of similarly situated workers who worked in New York, on a class basis pursuant to Fed.R.Civ P. 23 ("New York Class Members").

By Order filed October 22, 2020 (Dkt. 62) ("October 22, 2020 Order"), this case was conditionally certified as a collective action under the FLSA on behalf of all hourly machine operators employed by Defendant at any time from September 30, 2016 to March 26, 2019, and all other hourly production workers employed by Defendant from April 11, 2017 to March 26, 2019 (together, "putative collective members"), and Defendant was directed to identify all putative collective members and provide the putative collective members with contact information ("Court-approved Notice").[1]  On

---

[1] The October 20, 2022 Order also tolled the statute of limitations relative to the FLSA claims for hourly-paid machine operators from September 30, 2019 until October 22, 2020, and for all other members of the putative collective class from January 12, 2020 to June 27, 2020, and from October 9, 2020 to October 16, 2020 (for a total of 172 days).  October 20, 2022 Order ¶ 7.

November 23, 2020, based on information provided by Defendant, the Court-approved Notice was sent to 945 putative collective members with directions to file by January 22, 2021, written consent forms indicating the intent to opt-in to the FLSA collective action. In response to the Court-approved Notice, 63 persons, including the two Named Plaintiffs, timely filed written consents, thereby becoming Opt-in Plaintiffs with regard to the FLSA claims ("FLSA collective" or "Opt-in Plaintiffs").[2]  Eight of the 63 Opt-in Plaintiffs in the FLSA collective also have NYLL claims.  Defendant's employment records revealed 220 employees who were potential members of the putative New York Class, for which Defendant provided names, last known addresses, social security numbers, and information pertinent to the class period, *i.e.*, May 22, 2013 through March 26, 2019.  Of the 220 identified employees with possible claims pursuant to NYLL, 99 submitted claims to become members of the New York Class, along with the 8 Opt-in Plaintiffs who also have NYLL claims for a total of 107 putative "New York Class members."  There thus are, in total, 162 Settlement Class Members (63 + 99) ("Plaintiffs").

On October 27, 2022, the parties reached a joint settlement, filing Plaintiff's [Second][3] Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and Certification of Class for Settlement Purposes (Dkt. 97) ("Preliminary

---

[2] Although the Settlement Agreement refers to 64 Opt-in Plaintiffs in the FLSA, the list of Opt-in Plaintiffs provided in support, Dkt. 97-2, contains the names of only 63 Opt-in Plaintiffs.  No explanation for the disparity is provided.

[3] Unless otherwise indicated, bracketed material has been added.

Settlement and Class Certification"),[4] with exhibits A and B, respectively, the Notice of Proposed Collective and Class Action Settlement and Final Approval Hearing for the Opt-in Plaintiffs ("Opt-In Notice"), and for the New York Class Members ("New York Class Members Notice"), as well as a Claim Form as exhibit C for use by those choosing to participate in the action. Attached to the Preliminary Settlement and Class Certification are exhibits 1 through 18 (Dkts. 97-1 through 97-18) ("Plaintiffs' Exh(s). __"), and a proposed Preliminary Approval Order (Dkt. 97-19). Plaintiffs' Exh. 97-1 is the Joint Stipulation of Settlement and Release ("Settlement Agreement"), providing the terms of the settlement including, *inter alia*, that Plaintiffs' counsel was to select a Claims Administrator to assist with, *inter alia*, notice to all Plaintiffs, and to be approved by Defendant's counsel. Settlement Agreement, Definitions at 6, ¶ 1.33. In the Declaration of Jason T. Brown[, Esq.,] in Support of Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and for Certification of Class for Settlement Purposes (Dkt. 98) ("First Brown Declaration"), Brown avers that the parties "have agreed to use Simpluris, Inc. ("Simpluris") as the Claims Administrator." First Brown Declaration ¶ 25.

On January 10, 2023, the parties consented pursuant to 28 U.S.C. § 636(c) to proceed before a United States magistrate judge for consideration of the Preliminary Settlement and Class Certification, as well as Plaintiffs' anticipated forthcoming motion seeking final approval of the Settlement and Class Counsel's proposed attorney's fees, litigation costs and expenses, Service Awards, and Settlement Claims Administrator's

---

[4] Plaintiffs' prior Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Class for Settlement Purposes and Incorporated Memorandum of Law filed May 12, 2022 (Dkt. 86), was denied on August 24, 2022 (Dkt. 89).

fees and costs.  (Dkt. 99) ("the Consent").  At that time, United States Magistrate Judge Jeremiah J. McCarthy was the assigned magistrate judge.

On January 17, 2023, Judge McCarthy preliminarily approved the Settlement Agreement (Dkt. 100) ("Preliminary Approval Order"), and a Fairness Hearing was scheduled for June 20, 2023.  In the Preliminary Approval Order, the court (1) preliminarily approved the Settlement Agreement, Preliminary Approval Order ¶ 1; (2) approved the form and content of the proposed notices to be sent to the Opt-in Plaintiffs and New York Class Members and directed the notices be provided to all Settlement Class Members, *id.* ¶ 6; (3) advised the Settlement Class Members of the opportunity to object to the Settlement Agreement, *id.* ¶ 10; (4) confirmed the appointment of Plaintiffs' counsel Jason T. Brown and Nicholas Conlon of Brown, LLC as Class Counsel ("Class Counsel" or "Plaintiffs' Counsel"), *id.* ¶ 7, Szalasny as Class Representative of the New York Class, *id.* ¶ 8, and both Robertson and Szalasny as representatives of the FLSA collective, *id.*; (5) authorized the use of a Claims Administrator identified in the Settlement Agreement to effectuate notice to the Settlement Class members, with Defense counsel to provide the Claims Administrator with the information necessary to effectuate such notice, *id.* ¶ 9, and (6) scheduled a Fairness Hearing to determine whether to grant final approval of the Settlement Agreement.  *Id.* ¶ 4.

On June 5, 2023, Plaintiffs filed Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, Class Counsel's Proposed Attorneys' Fees and Costs, and Settlement Administrator's Fees and Costs (Dkt. 102) ("Plaintiff's Motion"), supported by a proposed Final Approval Order and Judgment (Dkt. 102-1). Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Final Approval of

Class Action Settlement, Service Awards, Class Counsel's Proposed Attorneys' Fees and Costs, and Settlement Administrator's Fees and Costs (Dkt. 103) ("Plaintiffs' Memorandum"), with exhibits 1 through 7 (Dkts. 103-1 through 103-7) ("Plaintiffs' Exh(s). __"), and the Declaration of Jason T. Brown[, Esq.] in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Service Awards, Class Counsel's Proposed Attorneys' Fees and Costs, and Settlement Administrator's Fees and Costs (Dkt. 104) ("Second Brown Declaration"), with exhibits 1 through 7 (Dkts. 104-1 through 104-7) ("Second Brown Declaration Exh(s). __").

As scheduled by the Preliminary Approval Order, the Fairness Hearing was held on June 20, 2023 (Dkt. 105) ("the Fairness Hearing"), during which Judge McCarthy exhaustively questioned Class Counsel regarding ethical issues pertaining to another, unrelated action pending in this court, *i.e.*, *Bonuro v. UHL Ventures LLC*, 22-CV-395 (W.D.N.Y.) ("*Bonuro*"), also a hybrid collective/class action involving violations of the FLSA and NYLL in which the plaintiffs were represented by Class Counsel in this action. *See* Hearing Tr.[5] at 12-19. In *Bonuro*, Judge McCarthy particularly took issue with the amount of attorney fees requested by the plaintiffs' counsel which greatly exceeded the amount recovered for the plaintiffs. *See Buono*, March 9, 2023 Report and Recommendation (22-CV-395, Dkt. 30) at 9-10. At the conclusion of the Fairness Hearing, Judge McCarthy reserved decision. Hearing Tr. at 19. In a Decision and Order filed July 5, 2023 (Dkt. 106) ("D&O"), Judge McCarthy determined that he "cannot rely on class counsel's competence and integrity to approve this settlement," D&O at 6, and denied Plaintiffs' Motion including settlement and class certification. *Id*. Other than

---

[5] References to "Hearing Tr." are to the pages of the corrected transcript of the June 20, 2023 Fairness Hearing, filed as Dkt. 108.

determining that Plaintiffs' Counsel would not adequately represent the New York Class,

Judge McCarthy did not reach the remaining requirements for class certification under

Fed.R.Civ.P. 23(a) and (b) ("Rule 23__"), or the fairness of the proposed Settlement

Agreement.  *Id*.

On August 14, 2023, Plaintiffs moved for reconsideration (Dkt. 110), which Judge

McCarthy denied on December 15, 2023 (Dkt. 114).  Also on December 15, 2023,

Plaintiffs petitioned the Second Circuit to appeal the denial of class certification. (Dkt.

113).  On May 21, 2024, Plaintiffs filed an interlocutory appeal with the Second Circuit

Court of Appeals regarding the denial of settlement approval.  (Dkt. 115).

On May 28, 2024, the Second Circuit granted Plaintiff's petition to appeal the

denial of class certification, determining there was no reason to believe that Plaintiffs'

Counsel would not adequately and fairly represent the interests of the class, *i.e.*, the

only issue Judge McCarthy addressed with regard to certifying the New York Class.

(Dkt. 119).  District Judge Sinatra then referred the matter to the undersigned.  (Dkt.

120).  On May 8, 2025, the Second Circuit vacated the D&O and remanded the matter

to this court for further consideration of the proposed Settlement Agreement, observing

that the concerns Judge McCarthy raised regarding Class Counsel were without merit.[6]

(Dkt. 122) (Second Circuit Mandate").  Plaintiffs' Motion is now before the undersigned

for Decision and Order pursuant to the parties' January 10, 2023 Consent.[7]

---

[6] On July 6, 2023, Plaintiffs' counsel engaged in mediation in *Bonuro* and reached a new settlement with
significantly lower attorney fees, and eventually preliminary and final approvals of the class settlement in
*Bonuro* were entered on March 29, 2024 (22-CV-395, Dkt. 60, preliminary settlement approval), and on
July 26, 2024 (22-CV-395, Dkts. 73 & 74, respectively, final settlement approval and final approval of
attorney fees and costs).

[7] "Title 28 U.S.C. § 636(c)(1) states that, '[u]pon the consent of the parties, a full-time United States
magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the
entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court

The Second Circuit's granting of Plaintiff's petition challenging the denial of class certification determined that the New York Class would be adequately represented by Plaintiffs' counsel.  Accordingly, the action is again before the court for consideration and approval of the parties' Settlement Agreement (Dkt. 97-1).  Because the Settlement Agreement is unopposed, no New York Class Member or any Opt-in Plaintiff appeared at the Fairness Hearing, and the papers filed by both the Plaintiffs and Defendant are sufficiently thorough, the court finds that rather than schedule a new fairness hearing, the Fairness Hearing will be continued, on the papers, and without further notice to the Settlement Class members.  See *Sicajan Diaz v. Pizza Napolitana, Inc.*, 2020 WL 8265766, at *1 (E.D.N.Y. Dec. 4, 2020), (finding fairness hearing could be held on the papers where the parties' submissions were thorough), *report and recommendation adopted*, 2021 WL 260093 (E.D.N.Y. Jan. 26, 2021).  Having carefully and thoroughly reviewed the Settlement Agreement, including the exhibits attached thereto and all

---

or courts he serves.'"  *Astra USA, Inc. v. Bildman*, 375 Fed.Appx. 129, 132 (2d Cir. 2010) (quoting 28 U.S.C. § 636(c)(1)).  "Litigants enjoy no absolute right to withdraw a validly given consent to proceed before a magistrate judge."  *Savoca v United States*, 199 F. Supp. 3d 716, 721 (S.D.N.Y. 2016) (quotation marks omitted). "Once a case is referred to a magistrate [judge] under section 636(c), the reference can be withdrawn only by the district court, and only for good cause shown on its own motion, or under extraordinary circumstances shown by any party."  *Dale v. Raczynski*, 2022 WL 4479528, at *1 (2d. Cir. Sept. 27, 2022) (summary order) (alterations omitted).  "Where parties consent to the jurisdiction of a specifically-named magistrate judge, any subsequent disposition by another magistrate judge without the consent of the parties is improper and must be vacated."  *Sell v. Conway*, 2011 WL 5325978, at *1 (W.D.N.Y. Nov. 4, 2011) (citing *Mendes Junior Int'l Co. v. M/V Sokai Maru*, 978 F.2d 920, 924 (5th Cir.1992)).  "Where, however, the 'plain language of the [consent form] indicates that the parties consent to have *any* [magistrate judge] preside in their case,' a later transfer to a second magistrate judge is not improper."  *Id*. (quoting *Hester v. Graham, Bright & Smith, P.C.,* 289 Fed.Appx. 35, 39–40 (5th Cir.2008)) (emphasis and bracketed material in *Sell*).  Further, "[a] party may implicitly consent to the jurisdiction of a magistrate judge by appearing before that magistrate judge without objection and filing motions after receiving notice of the reassignment."  *Id*. (citing *Astra USA, Inc. v. Bildman,* 375 Fed.Appx. 129, 132 (2d Cir.2010)).  In the instant case, because the consent form signed by the parties, Dkt. 99, does not name a specific magistrate judge before whom the parties were consenting to proceed on Plaintiffs' Motion, the Consent remains in place after Judge Sinatra's referral of the matter to the undersigned.

supporting papers and written submissions, the court finds that good cause exists to approve the New York Class and the Settlement Agreement.

**Discussion**

**1.      Overview of Settlement Agreement and Relevant Law**

The Settlement Agreement for which the parties seek final approval pertains to both the FLSA and NYLL claims, and also provides for payment of a "service award" to both Named Plaintiffs, Robertson and Szalasny, for their service as class representatives, and seeks an award of Plaintiffs' attorney fees and litigation costs incurred in connection with this action.  Because the Amended Complaint asserts a claim under the FLSA, judicial approval is required for settlement.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  Fed.R.Civ.P. 23 ("Rule 23__"), pursuant to which the NYLL claim is asserted, also provides that "a class action cannot be settled without approval of the District Court."  *D'Amato v. Deutsche Bank*, 236 F3d 78, 85 (2d Cir. 2001) (citations omitted).  The class representatives may be granted incentive or "service awards" at the court's discretion.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court.").  Further, "[u]nder the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."  *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing 29 U.S.C. § 216(b); NYLL § 663(1)).

"The FLSA was designed to protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum

standard of living necessary for health, efficiency, and general well-being.'"  *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)).  "New York similarly enacted minimum wage standards to remedy the practice of persons working 'at wages insufficient to provide adequate maintenance for themselves and their families . . . .'"  *Id*. (quoting  N.Y. Lab. Law § 650 (McKinney 2002)).  "Victims of wage and hour violations therefore often have parallel claims under both the FLSA and [NYLL]."  *Id*.

Pursuant to 29 U.S.C. § 216(b) ("§ 216__"), the FLSA provides that a plaintiff may bring a private right of action as a "collective action" to recover unpaid overtime compensation and liquidated damages on behalf of himself and others "similarly situated" from employers who violate the FLSA's overtime provisions.  *Shahriar*, 659 F.3d at 243-44 (quoting 29 U.S.C. § 216(b)).  Collective actions pursuant to § 216(b) are referred to as "opt-in" actions because "an employee [must] affirmatively consent to join a 'collective action' in order to assert a claim."  *Id*. (quoting 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")).

In contrast, NYLL "does not have a provision for collective actions.  Instead, plaintiffs may pursue a traditional "opt-out" class action through class certification for their state law claims."  *Shahriar*, 659 F.3d at 244.  "Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to

pursue the NYLL claims as a class action under the district court's supplemental jurisdiction." *Id*. Despite an apparent conflict between the opt-in procedure for FLSA collective actions and the opt-out procedure for NYLL class actions, the Second Circuit has held that employees may simultaneously proceed with both an FLSA collective action and a NYLL class action involving the same facts. *Id*., 659 F.3d at 249. Cases in which the plaintiffs pursue both FLSA claims as a collective action under § 216(b) and NYLL claims as a class action under Rule 23 are considered "hybrid" actions. *Marin v. 310 Bowery Group LLP*, 2025 WL 893731, at *5 (S.D.N.Y. Mar. 24, 2025).

The members of the Settlement Class include Named Plaintiffs, those who opted into the collective action under the FLSA ("Opt-in Plaintiffs"), and as those pursuing the NYLL claim as New York Class Members. Of the 945 putative collective members to whom the Court-approved Notice was sent on November 23, 2020 advising of the FLSA claim, 63 Opt-in Plaintiffs, including the two Named Plaintiffs, filed by the January 22, 2021 deadline written consent pursuant to § 216(b). Those who timely returned a completed Claim Form are considered "Participating Class Members" who are eligible to receive payment pursuant to the Settlement Agreement. As regards the NYLL claim, of 248 notice packets sent to putative New York Class members, only five were returned as undeliverable and 99 submitted Claim Forms and are thus included in the New York Class.

The Settlement Agreement provides for a total Gross Settlement Fund or "GSF" of $ 840,000, Settlement Agreement, Definitions § 1.14, with the Qualified Settlement Fund ("QSF") the amount to be paid by Defendant to resolve the FLSA and NYLL wage and hours claims brought by the members of the Settlement Class. *Id*. § 1.28 (defining

"Qualified Settlement Fund" as "the account established by the Settlement Claims Administrator for the Settlement Payment Amount paid by Defendant), and § 1.32 (defining "Settlement Payment Amount" as including "(1) the amounts payable to Participating Class Members from the Net Settlement Fund; (2) the Settlement Claims Administrator's fees and costs; (3) Court-approved attorneys' fees and costs for Class Counsel; (4) Court-approved Service Awards to Named Plaintiffs; (5) the Opt-In Fund; and (6) Employer Payroll Taxes).  The Settlement Agreement is supported by declarations from four putative New York Class members, ten declarations from Opt-in Plaintiffs asserting FLSA claims, and exhibits documenting Defendant's time and attendance policies, timeclock summaries for several Settlement Class members showing their unpaid time averaged 8.3 minutes per day.  First Brown Declaration ¶ 7.  The Net Settlement Fund, *i.e.*, the amount of the GSF minus the award for attorney fees (up to one-third of the GSF or $280,000), litigation costs ($ 14,581.54), Claims Administrator's fees and costs ($ 7,850), and the so-called "Service Awards" to be paid to each Named Plaintiff ($ 10,000 to each for total of $ 20,000), is estimated to be $ 517,568.46 ("Net Settlement Fund"),[8] and is to be divided into an Opt-in Fund for payment to those Plaintiffs asserting FLSA claims, and a Rule 23 Settlement Fund for the New York Class Members.  Settlement Agreement, Definitions § 1.17; Butler Declaration ¶ 14. The amount to be paid to each Settlement Class Member depends on whether each such member asserts claims pursuant to NYLL, the FLSA, or both, as well as the number of weeks each member worked during the subject period. Specifically, of the $ 517,568.46 Net Settlement Fund, the Opt-in Fund will receive 17%

---

[8] The amount of the Net Settlement Fund is estimated because the numbers provided for the attorney fees and costs were not final when Plaintiffs' Motion was filed.

or $ 87,986.64, whereas the Rule 23 Settlement Fund will receive the remaining 83% or $ 429,581.92.  *Id*.  Further, the 99 putative New York Class members plus the 8 Opt-in Plaintiffs who assert both FLSA and NYLL claims and who also timely filed Claim Forms represent 48.63% of the total New York Class of 220 and will share in 62.20% of the Rule 23 Settlement Fund or $ 267,199.89.[9]  *Id.* ¶ 16.

**2.    Motion for Final Approval**

Before the court is Plaintiffs' unopposed motion seeking both final approval of certification of the New York Class as well as of the proposed Settlement Agreement.

**A.    NYLL**

As stated, the NYLL claims are asserted as a class action pursuant to Rule 23 which provides that "a class action cannot be settled without approval of the District Court."  *D'Amato v. Deutsche Bank*, 236 F3d 78, 85 (2d Cir. 2001) (citations omitted). After preliminarily approving a settlement and class certification, the "court 'then grants or denies final approval of the settlement and certification of the class.'"  *Noto v. 22nd Century Group, Inc.*, 2023 WL 7107840, at * (W.D.N.Y. Oct. 17, 2023) (quoting *Patterson v. Premier Constr. Co. Inc.*, 2017 WL 122986, at * 2 (E.D.N.Y. Jan. 12, 2017)), *report and recommendation adopted*, 19-CV-1285-JLS-MJR, Dkt. No. 98 (W.D.N.Y. Oct. 23, 2023) (slip op.).  "'Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.'"  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 & n 22 (2d Cir. 2020) (quoting *In re American Intern. Group, Inc. Securities Litig.*, 689 F.3d 229, 238 (2d Cir. 2012), *abrogated on other grounds*, *Amgen Inc. v. Connecticut Retirement*

---

[9] The Settlement Agreement also includes that all Settlement Class members agree to release Defendant from further lawsuits pertaining to wage and hours claims.  Settlement Agreement § 4.

*Plans and Trust Funds*, 568 U.S. 455 (2013)).  Once the class has been certified, the court must then consider whether the proposed settlement, "taken as a whole, is fair, reasonable, and adequate."  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  The court thus first considers whether the putative New York Class should be certified pursuant to Rule 23.

### 1.    Certification of the New York Class

Despite being preliminarily approved, the putative New York Class must be granted final certification for purposes of settlement.  Claims brought in federal court for violations of state overtime rules may be certified as class actions and Fed.R.Civ.P. 23 applies to determine whether class certification is appropriate.  *See Lisnitzer v. Zucker*, 983 F.3d 578, 588 (2d Cir. 2020) ("We have made clear that the district court may certify a class only after determining that each Rule 23 requirement is met.") (citing cases).  The putative New York Class is defined in the Settlement Agreement as "those individuals who were employed by Trinity as a non-exempt, hourly production employee at its manufacturing facility located in Buffalo, New York from May 22, 2013 through March 26, 2019. . . ."[10]  Settlement Agreement §1.26.

"Certification of a class for settlement purposes is appropriate 'where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—as well as one of the three subsections of Rule 23(b).'"  *Beebe v. V&J National Enterprises, LLC*, 2020 WL 2833009, at * 4 (W.D.N.Y. June 1, 2020) (quoting *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009)) (footnote omitted in *Beebe*).  In

---

[10] Only those Plaintiffs suing under NYLL make up the putative New York Class for which class certification pursuant to Rule 23 is sought.

addition to the four Rule 23(a) prerequisites, "the Second Circuit also recognizes an implicit 'ascertainability' requirement, which commands that the proposed class be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).  "In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'"  *Beebe*, 2020 WL 28330009, at * 4 (quoting *Cohen*, 262 F.R.D. at 158) (further quotation omitted).  In the instant case, the putative New York Class meets all requirements for class certification under Rule 23(a) and 23(b).

### a.    Rule 23(a) Requirements

Rule 23(a) provides four prerequisites that must be satisfied to permit one or more class members to sue in a representative capacity on behalf of all class members. Fed.R.Civ.P. 23(a).  Specifically,

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>   (1) the class is so numerous that joinder of all members is impracticable;
>   (2) there are questions of law or fact common to the class;
>   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>   (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### i.    Numerosity

The numerosity element is satisfied where the class is sufficiently numerous as to render joinder "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Significantly, "numerosity is presumed at a level of 40 members. . . ." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg on*

*Class Actions 2d* (1985 Ed.) § 305)).  In the instant case, the putative New York Class includes the 99 Plaintiffs who sue only under NYLL as well as the 8 Opt-in Plaintiffs who sue under both the FSLA and NYLL, for a total of 107 putative New York Class members, far exceeding the 40 members required for a presumption of numerosity. Accordingly, the numerosity element is met.

### ii.    Commonality

Commonality exists where the "class members' claims share a common question of law or fact."  *Cohen*, 262 F.R.D. at 158.  Here, the common issues of law and fact concern Defendant's calculation of hours rounding policy in which time spent by hourly employees performing tasks both pre- and post-shift was always rounded down resulting in a failure to pay hourly workers for all time worked in excess of forty (40) hours in a workweek during the period May 22, 2013 through March 26, 2019, in violation of NYLL.  Claims that workers were not paid a minimum wage or paid for overtime satisfies Rule 23(a)'s commonality requirement for class certification. *See*, *e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (claims that workers were not paid a minimum wage nor paid for overtime satisfied commonality requirement).  The commonality element is thus satisfied.

### iii.    Typicality

"Typicality requires that the representative plaintiffs' claims are typical of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed,* 506

U.S. 1088 (1993)).   Although each Plaintiff may be entitled to different damages, "[b]ecause typicality does not require that the class representative claims be identical to those of the class, differences in damages will not destroy typicality."  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (quoting 5 *Moore's Federal Practice* § 23.24[5]).   In the instant case, all putative New York Class members allege that Defendant consistently rounded down the hours work both pre- and post-shift so as to deny the hourly workers overtime wages to which they were entitled in violation of NYLL.   "'As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.'"  *Id.*  (quoting *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.RD. 167, 170 (S.D.N.Y. 1997))).  Accordingly, the typicality requirement is also met.

### iv.    Adequacy

The adequacy element requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "'The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "To satisfy Rule 23(a)(4), the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'"  *Id.* (quoting *Amchem Prod., Inc.*, 521 U.S. at 625).  Further, "'[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other

17

class members.'"  *Id.* (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006)).  Here, Szalasny has no conflict interfering with his status as representative of the New York Class.

Further, the adequacy element also requires class counsel be qualified, experienced, and generally able to conduct litigation, *Beebe*, 2020 WL 2833009, at * 5 (citing *Cohen*, 262 F.R.D. at 158).  *See also Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262-63 (2d Cir. 2021) ("it is class counsel, not the class representatives, who are truly litigating the class's claims.").  It was because Judge McCarthy found reasons to preclude reliance on Plaintiffs' Counsel's competency and integrity, that Judge McCarthy denied Plaintiff's earlier motion for settlement and class certification.  D&O at 6.  In vacating the D&O, however, the Second Circuit found this factor was satisfied, Second Circuit Mandate at 10,[11] and the court does not further address it.

All four prerequisites set forth under Rule 23(a) are thus satisfied, and the court turns to whether the New York Class also satisfied the implied "ascertainability" requirement.

### b.    Implied Ascertainability

"The implied ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

---

[11] The Second Circuit Mandate analyzed the adequacy of Plaintiffs' Counsel pursuant to Fed.R.Civ.P. 23(g)(1)(B), which was added in 2003.  Fed.R.Civ.P. 23 Advisory Committee Notes to the 2003 amendment.  Previous to the addition of Rule 23(g), the competency of counsel was analyzed in connection with Rule 23(a)(4)'s adequacy requirement.  *See Jin*, 990 F.3d at 263 (courts "historically assessed the adequacy of class counsel under Rule 23(a)(4) even though that provision only concerns the adequacy of the class representatives.  When Congress enacted Rule 23(g) governing the appointment of class counsel, it codified this judicial practice, taking "a step towards the fuller acknowledgment that it is class counsel, not the class representatives, who are truly litigating the class's claims."  (quoting1 Newberg on Class Actions § 3:80 (5th ed.)).

> [T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.

*Brecher v. Republic of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015) (internal quotation omitted).

In the instant case, the putative New York Class members are readily identifiable from employment records maintained by Defendant. *See Marin*, 2025 WL 893731, at * 6 ("The Settlement Class is easily ascertainable given the parties' representation that, based on Defendants' employment records, there are at least 200 Class Members.") (citing *Amigon v. Safeway Constr. Enters., LLC*, 2024 WL 5040436, at *8 (E.D.N.Y. Dec. 9, 2024) ("The putative class is easily ascertainable, as Plaintiff represents that based on Defendants' wage data records, there is a list of approximately ninety-one individuals who comprise the putative class.)).

In the instant case, one Mary Butler ("Butler"), a case manager with Simpluris, Inc. ("Simpluris"), the court-approved Claims Administrator, explains that a review of Defendant's employment records reveals 220 employees who were potential members of the putative New York Class, for which Defendant provided names, last known addresses, Social Security numbers, and information pertinent to the class period, *i.e.*, May 22, 2013 through March 26, 2019. Butler Declaration ¶ 6. The New York Class is comprised of 107 Plaintiffs based on responses received to mailings to each of the potential New York Class members. *Id.* ¶¶ 7-11. Accordingly, the implied ascertainability requirement that the members of the New York Class be defined by objective criteria is satisfied.

### c.    Rule 23(b)

Once the Rule 23(a) and ascertainability criteria are satisfied, the court must

discern whether the putative New York Class also satisfies the criteria for one of Rule

26(b)'s three subsections. *Cohen*, 262 F.R.D. at 157-58. Here, the putative New York

Class fulfills the requirements of Rule 26(b)(3) that "questions of law or fact common to

class members predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Relevantly, "[c]lass-wide issues

predominate if resolution of some of the legal or factual questions that qualify each

class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to

individualized proof." *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

In the instant case, resolution of the common issues of law and fact includes

whether Defendant, in calculating the wages owed to the hourly workers, regularly

rounded down the amount of such hours, resulting in a diminution of wages, in violation

of NYLL. *See Marin*, 2025 WL 893731, at * 6 (S.D.N.Y. Mar. 24, 2025) (determining

plaintiffs' claims that defendant employers "maintained improper compensation

practices" in violation of NYLL were "subject to generalized proof and predominated

over any potential individual issues"). Relevantly, no Plaintiff or Defendant has

identified any individualized issues, leaving only common issues of law and fact for

which the proof will require comparing records showing when each putative New York

Class member clocked in and out of work, with other records showing how much the

employees were paid for the corresponding hours. Further, such comparison is a

relatively straightforward task rendering class settlement "a superior method for the fair and efficient adjudication of the claims of the [putative New York] Class members, who have limited resources to prosecute individual actions."  *Id*. (quoting *Lora v. To-Rise, LLC*, 452 F.Supp.3d 5, 10 (E.D.N.Y. 2019) ("Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.").  Under these circumstances, the requirements of Rule 26(b)(3) are satisfied.

### d.    Class Certification

Having determined the putative New York Class meets all requirements under Rule 23(a), the implied ascertainability doctrine, as well as the requirements for Rule 23(b)(3), the court is satisfied that the New York Class should be certified.

### 2.    Rule 23(e) and the Settlement Agreement

With the New York Class[12] certified, the court turns to whether the Settlement Agreement is fair, reasonable, and adequate pursuant to Rule 23(e).[13]  A proposed settlement agreement that binds the class members may be approved only upon a "'finding that it is fair, reasonable, and adequate.'"  *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed.R.Civ.P. 23(e)(2)).  Prior to 2018, the fairness, reasonableness, and adequacy of a proposed class settlement agreement was evaluated according to the nine so-called "*Grinnell* factors," set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

---

[12] Given the New York Class has been certified, the "putative" modifier is henceforth not used.

[13] The Settlement Agreement pertains to the Settlement Class including the Opt-in Plaintiffs and the New York Class members.

"These [*Grinnell* factors] include: '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'"

*Moses*, 79 F.4th 235, 242 n. 3 (quoting *Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022) (quoting *Grinnell Corp.*, 495 F.2d at 463) (internal citations omitted in *Hyland*)).

In 2018, however, Rule 23 was revised "to include a list of four 'primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." *Id.* (quoting Fed.R.Civ.P. 23(e)(2) Advisory Committee's Note to 2018 Amendment) (bracketed material in *Moses*). The considerations include

> whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) ("Rule 23(e)(2) factors").

"The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses*, 79 F.4th at 242-43 (citing Fed.R.Civ.P. 23(e)(2) Advisory Committee's Note to 2018 Amendment). Further, although prior to the 2018 amendment federal courts within the Second Circuit applied a presumption of

fairness to proposed settlement agreements based on arms-length negotiations, such presumption is no longer permitted but must be based on consideration of the Rule 23(e)(2) factors as well as "the proposed attorneys' fees and incentive awards." *Id*. at 243. Nevertheless, the court must evaluate the Rule 23(e)(2) factors in conjunction with the *Grinnell* factors "which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243 ("the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors"). In the instant case, the Rule 23(e)(2) factors weigh in favor of approving the Proposed Settlement Agreement.

### a.    Rule 23(e)(2)(A) - Adequate Representation

As part of the court's class certification analysis pursuant to Rule 23(a)(4), Named Plaintiff Szalsany was found to be adequate and without any conflict interfering with his status as the representative for the New York Class, and class counsel was found to be sufficiently qualified, experienced, and generally able to conduct litigation as to be adequate. *See* Discussion, *supra*, at 17-18. Given the similarity in the adequacy analysis under both Rule 23(a)(4) and Rule 23(e)(2)(A), the court finds that New York Class Representative Szalsany and Plaintiff's Counsel have adequately represented the interests of the New York Class members in this action, and that Plaintiff's Counsel have fairly and adequately represented the enforcement of the rights of the New York Class members in pursuing their claims under the NYLL. *See Fero v. Excellus Health Plan, Inc.*, 2022 WL 1292133, at * 4 (W.D.N.Y. Apr. 29, 2022) (finding determination that class representatives and class counsel were adequate with regard to Rule 23(a)(4) also established adequacy under Rule 23(e)(2)(A).

### b.    Rule 23(e)(2)(B) - Arm's Length Negotiation

To find that a settlement agreement is fair, the court must determine that the parties reached the agreement after engaging in arm's length negotiations, although arm's length negotiations alone do not give rise to a presumption of fairness.  *Moses*, 79 F.4th at 243.  In the instant case, in connection with initial settlement discussions, Defendant's counsel produced to Plaintiff's Counsel the payroll data for the entire Settlement Class and an agreement to toll the FLSA statute of limitations, and Plaintiffs' Counsel served discovery requests for information pertaining to certification of the New York Class.  Second Brown Declaration ¶ 8.  Between December 10, 2010 and June 23, 2020, Plaintiffs' Counsel and Defendant's Counsel engaged in two mediation sessions during which William F. Bauer, Esq. ("Bauer"), served as mediator. *Id*. ¶ 9. Settlement was eventually reached after a third mediation session with Bauer in January 2022.  *Id*. ¶ 10.  Additionally, all legal counsel involved in the mediation sessions are seasoned attorneys with regard to litigating class and collective wage and hour cases with the Settlement Agreement largely driven based on information derived from the time and payroll records produced by Defendant as well as information by Opt-in Plaintiffs.  *Id*. ¶ 10.  Under these circumstances, the court finds the Settlement Agreement is the product of arm's-length, good faith negotiations involving a credentialled mediator and experienced and independent counsel for all parties.  *See*, *e.g.*, *Whelan v. Diligent Corp.*, 349 F.R.D. 79, 85–86 (S.D.N.Y. 2025) (determining a proposed settlement agreement was the result of arm's-length negotiations where the parties spent six months negotiating settlement with assistance of a private mediator who helped parties independently evaluate strengths and weaknesses of their claims

and defenses, and throughout all negotiations, counsel for all sides zealously advocated for their clients' positions).

With the criteria for both Rule 23(e)(2)(A) and (B) met, the Settlement Agreement comports with the procedural fairness requirement and the court next discusses whether the Settlement Agreement also comports with the substantive fairness requirements under Rule 23(e)(2)(C) and (D).

### c.    Rule 23(e)(2)(C) - Adequate Class Relief

As regards whether the Settlement Agreement provides adequate relief to the Settlement Class, the court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed.R.Civ.P. 23(e)(2)(C).  All four criteria are pertinent here.

### i.    Costs, Risks, and Delay of Trial and Appeal

Consideration under Rule 23(e)(2)(C)(i) of the costs, risks, and delay of trial and appeal subsumes the first, fourth, fifth, sixth, eighth, and ninth *Grinnell* factors, pertaining to the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, the risks of maintaining the class through trial, the range of reasonableness of the settlement fund in light of the best possible recovery, as well as all the attendant risks of litigation.  *Marin*, 2025 WL 893731, at * 7 (quoting *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021)).  "Courts favor a settlement that 'results in substantial and

tangible present recovery, without the attendant risk and delay.'" *Id*. (quoting *Sykes v. Harris*, 2016 WL 3030156, at * 12 (S.D.N.Y. May 24, 2016)).

"Given a class action suit's complexity, 'it is reasonable to assume' that, without a settlement, continued litigation will require 'extensive time and expense.'" *Caccavale v. Hewlett-Packard Co.*, 2025 WL 882220, at * 7 (E.D.N.Y. Mar. 14, 2025) (quoting *Garland v. Cohen & Krassner*, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011)). Further, "'[i]n considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id*. (quoting *Mikhlin*, 2021 WL 1259559, at *5).  Here, the history of this action and supporting declarations and exhibits filed in connection with both the earlier motion for preliminary approval as well as Plaintiffs' Motion seeking final judicial approval of the Settlement Agreement establishes that the Settlement Agreement is superior to the costs, risks, and delay of trial and appeal.

In particular, Plaintiffs explain that prior to reaching a settlement, "[t]he merits of the litigation were hotly contested by both sides," with Defendant contesting conditional certification of the FLSA Collective and would likely have opposed Plaintiff's motion for certification of the New York Class pursuant to Rule 23.  First Brown Declaration ¶ 14. Prior to trial, in addition to filing memoranda of law on anticipated competing summary judgment motions, Defendant likely would move to decertify the FLSA Collective, all costly and time-consuming endeavors.  *Id*.  The parties recognize several defenses are available to Defendant that pose risks to establishing liability, damages, and maintaining the class through trial, including challenging that the collective and class members are not similarly situated, and the pre- and post-shift work for which Plaintiffs seek

compensation in this action was not compensable or, alternatively, the alleged amount of uncompensated time is grossly exaggerated and is *de minimus* and thus not compensable. *Id*. ¶ 15. Other defenses include that Defendant's rounding policy was fairly implemented and not one-sided, that Plaintiffs' claims relative to straight time damages are untenable or not well-suited for class treatment, and that Plaintiffs cannot successfully establish any willful violations of the relevant FLSA and NYLL wage and hours provisions on which they sue. *Id*. These anticipated litigation proceedings and defenses establish that absent settlement, the proceedings would be complex, costly, and lengthy in this court, as well as in the Second Circuit on any appeals. *Id*. ¶ 16.

Further, the proposed settlement fund is, in light of the best possible recovery, reasonable given that, based on the determination that each Settlement Class Member was not compensated for an average of 8.3 minutes per day,[14] with the average recovery calculated at $ 2,179.01, and the highest recovery $ 8,489.67. First Brown Declaration ¶ 7; Butler Declaration ¶ 17. The amounts recovered are 100% of the actual and liquidated damages that can be recovered for the FLSA claims and 87% of the overtime and straight-time wages that could be recovered on the NYLL claims.[15] First Brown Declaration ¶ 7; see Second Brown Declaration ¶ 16 (averring recovery was 100 % of actual and liquidated damages for FSLA claim and "approximately 90% of the

---

[14] The amount of uncompensated time ranges from 3 to 12 minutes per violation. *See* Dkts. 97-14 through 97-16 (sample time-clock summaries for Opt-in Plaintiffs Brian Belcher, Robertson, and Devon Taylor).

[15] "Both the FLSA and NYLL provide for an award of liquidated damages, equal to the amount of unpaid wages, to the prevailing employee." *Hardgers-Powell v. Angels In Your Home LLC*, 2019 WL 4929830, at *4 (W.D.N.Y. Oct. 7, 2019) (citing NYLL § 198(1-a); 29 U.S.C. § 216(b)). *See also Alonso Vazquez v. Azoulay*, 834 Fed.Appx. 653, 655 (2d Cir. 2021) ("Under NYLL § 198(1)(1-a), plaintiffs are entitled to recover liquidated damages . . . ."); *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." (citing 29 U.S.C. § 216(b)).

unpaid overtime and straight-time wages" for the NYLL claim).  *See Pickard v. OnSite Facility Serv., LLC*, 2023 WL 7019256, at \*8 \*N.D.N.Y. Oct. 25, 2023) (approving NYLL wage and hour class action settlement representing 16% of the class's maximum recovery).  Although recovery for the NYLL claims is less than 100% of the possible actual and liquidated damages, Plaintiffs explain that absent settlement, recovery on the NYLL claims is accompanied by additional challenges compared to recovery on the FLSA claims, including that class certification of the New York Class is subject to the more stringent requirements of Rule 23, such that the New York Class would be subject to a higher risk of decertification.  Dkt. 97 at 18-19.

As regards participation rates, of 220 packets containing both notices and claim forms sent to those employees identified as putative New York Class members, 99 of those eligible to pursue only NYLL claims along with another eight eligible to pursue both FLSA and NYLL claims, returned claim forms and thus are New York Class members, *i.e.*, a participation rate of 48.63% for the New York Class.  Second Brown Declaration ¶ 16.  This rate favorably compares to similar class actions.  *See*, *e.g.*, *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at \* 5 (W.D.N.Y. Dec. 29, 2016) (considering 43% participation rate based on submission of claim in Rule 23 class "extraordinary" and citing *Cambery v. Tuxedo Junction Inc.*, 2014 WL 3725157, at \* 6 (W.D.N.Y. 2014) (considering 37% submission of claims to be an "unusually high participation rate for a "claims made" settlement agreement which "'regularly yield response rates of 10 percent or less.'" (quoting *Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D.Me. 2005))).

These undisputed assertions, supported by declarations and exhibits, establish that this factor, as well as the first, fourth, fifth, sixth, eighth, and ninth *Grinnell* factors, weigh in favor of approving the Settlement Agreement.

### ii.    Effectiveness of Proposed Distribution Method

Evaluation of the Rule 23(e)(2)(C)(ii) requirement pertaining to the effectiveness of the parties "proposed method of distributing relief to the class, including the method of processing class-member claims," requires not that the allocation plan for settlement funds be perfect, but that there is "a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Mikhlin*, 2021 WL 1259559, at *6.  In the instant case, the Settlement Agreement provides for the Claim Administrator to mail settlement checks drawn from the QSF to each Participating Class Member at the address provided by each such member on the timely submitted Claim Form.  Settlement Agreement § 2.10.  The settlement checks are to be paid within 15 days after the Claims Administrator receives the agreed upon funds from Trinity.  *Id*. § 3.1.  Further, each Participating Class Member's proportionate share is to be determined pursuant to a formula based upon the number of weeks each Participating Class Member worked as a non-exempt, hourly production employee at Trinity's Buffalo plant. *Id*. ¶ 3.4(B).  This distribution method appears fair and reasonable.  *See*, *e.g.*, *Marin*, 2025 WL 893731, at * 8 (approving class settlement distribution method that was based on a proportionate share formula).

### iii.    Proposed Attorneys' Fees Award

Rule 23(e)(2)(C)(iii) requires the court to consider the "terms of any proposed award of attorney's fees, including timing of payment . . . ."  The instant Settlement

Agreement provides for Class Counsel to seek an award of attorney gees not to exceed one-third or $ 280,000, of the Settlement Amount of $ 840,000.  Settlement Agreement § 3.2(A).  The Court has discretion to award fees based on either the lodestar method or the percentage method.  *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("Although we have acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." (internal quotation omitted)).  "In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance."  *Story v. SEFCU*, 2021 WL 736962, at *12 (N.D.N.Y. Feb. 25, 2021) (citation omitted).  A "baseline" fee of 33% of the instant GSF has been found reasonable.  *See Edwards v. Mid-Hudson Valley Fed. Credit Union*, 2023 WL 5806409, at *10 (N.D.N.Y. Sept. 7, 2023) (considering class counsel award of approximately 33% of the Settlement Fund to be reasonable for purposes of Rule 23(e)(2)(C)(iii)).  Further, the more in-depth analysis of the requested fees pursuant to Rule 23(h), as discussed below in connection with Class Counsel's application for attorney fees and costs, Discussion, *infra*, at 39-43, also establishes the one-third baseline amount is reasonable here.[16]

---

[16] "But Rule 23(h) and Rule 23(e) are distinct rules with distinct purposes, and analyses conducted under one cannot suffice to satisfy the other."  *Kurtz v. Kimberly-Clark Corporation*, 142 F.4th 112, 120-21 (2d Cir. 2025).

### iv.    Agreements under Rule 23(e)(3)

Pursuant to Rule 23(e)(2)(C)(iv), the court must consider whether there are any agreements to be identified under Rule 23(e)(3), which "is aimed at revealing 'undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others,' namely, the representative plaintiffs or their attorneys." *In re Northern Dynasty Minerals Ltd. Securities Litigation*, 2023 WL 5511513, at *9 (citing Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment).  Here, the Parties are unaware of any agreement that would require disclosure under Rule 23(e)(3).  Stipulation Regarding Settlement ¶ 43. "Therefore, this factor 'has no bearing on the preliminary approval analysis.'"  *Cymbalista v. JPMorgan Chase Bank, N.A.*, 2021 WL 7906584, at *9 (E.D.N.Y. May 25, 2021) (citing *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019)).  Accordingly, both Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) weigh in favor of the Settlement Agreement.

### d.    Rule 23(e)(2)(D) – Equitable Treatment of Class Members

Under Rule 23(e)(2)(D), the court considers whether the proposed Settlement Agreement "treats class members equitably relative to each other."   Here, the proposed Settlement Agreement provides that monies in the Net Settlement Fund will be distributed to each Settlement Class member on a pro-rata basis calculated according to the number of workweeks each Settlement Class member worked during the subject period.  Settlement Agreement § 3.4.  Significantly, Rule 23(e)(2)(D)'s requirement that class members be equitably treated relative to each other is considered satisfied where each class member is to receive a pro rata share of the settlement fund.  *See*, *e.g.*,

*Edwards v. Mid-Hudson Valley Federal Credit Union*, 2023 WL 5806409, at * 9

(N.D.N.Y. Sept. 7, 2023) (citing cases including, *inter alia*, *Christine Asia Co. v. Yun Ma*,

2019 WL 5257534, at * 15 (S.D.N.Y. Oct. 16, 2019) (finding Rule 23(e)(2)(D)'s

requirement that class members be treated equitably relative to each other is satisfied

where each class member was to receive a "pro rata share" of the settlement fund));

*accord*, *In re Namenda Direct Purchaser Antitrust Litigation*, 452 F.Supp.3d 307, 316

(S.D.N.Y. 2020).

　　In addition to the Settlement Agreement's provision for pro rata distribution of the

settlement fund to a calculation based on the amount of time each New York Class

member worked during the subject period, the court must also consider the Settlement

Agreement's provision for each of the two Named Plaintiffs to receive incentive or

"service" awards of $ 10,000.  *See Caccavale*, 2025 WL 882220, at ** 12-13

(considering the impact of service awards on the equitable treatment of class members

factor).  Rule 23(e)(2)(D)'s mandate "direct[ing] courts to approve a settlement proposal

only if it 'treats class member equitably relative to each other,' . . . is harmonious with,

and promoted by, [the Second Circuit's] clear precedent that permits district courts to

approve fair and appropriate incentive awards to class representatives."  *Moses*, 79

F.4th at 253 (quoting Fed.R.Civ.P. 23(e)(2)(D), and citing cases including, *inter alia*,

*Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir. 2019) (that class

action involved a common settlement fund from which class members were to be paid

did not preclude payment of incentive bonuses to named class representative

plaintiffs)).  Relevantly, "[i]ncentive awards encourage class representatives to

participate in class action lawsuits, which are 'designed to provide a mechanism by

which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries.'"  *Id*. (quoting S.Rep. No. 109-14, at 5; 1 Joseph McLaughlin on Class Actions § 1:1 (19th ed. 2022) (narrating the historical purposes of incentive awards); and *Johnson v. NPAS Sols. LLC*, 43 F.4th 1138, 1145 (11th Cir. 2022) (Pryor, *J*., dissenting from the denial of rehearing *en banc*)).  "Such incentive awards often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement."  *Id*. at 235.

According to the Second Circuit, "'the decision to grant the [service] award, and the amount thereof, rests solely within the discretion of the Court."  *Fikes Wholesale, Inc. v. HSNC Bank USA, N.A.*, 62 F.4th 704, 722 (2d Cir. 2023) (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016)) (brackets in *Fikes Wholesale, Inc.*). Although "'[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives,'" *Moses*, 79 F.4th at 256 (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (2d Cir. 2015)), courts generally rely upon several factors in determining whether to grant service awards.  *See Fiske Wholesale, Inc.*, 62 F.4th at 721.  Such factors include,

> "[1] the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, [2] the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), [3] any other burdens sustained by that plaintiff ... and, of course, [4] the ultimate recovery."

*Id*. (quoting *Dial Corp.*, 317 F.R.D. at 439 (bracketed material in *Fiske Wholesale, Inc.*).

Here, the Settlement Agreement provides for payment of $10,000 to each of the two Named Plaintiffs, *e.g.*, Robertson and Szalasny.  Settlement Agreement § 3.3.  In support of these awards, both Robertson and Szalasny have submitted declarations explaining that they have been involved in this action since April 2019, Robertson Declaration ¶ 6; and November 2019, Szalasny Declaration ¶ 7.  Since becoming involved in this action, both Named Plaintiffs have represented the interests of all hourly-paid production employees and assisted Plaintiffs' Counsel with investigating and prosecuting the claims by providing Plaintiffs' Counsel with relevant information and documents including paystubs, timesheets, and copies of written policies, which information was used by Plaintiffs' Counsel to draft the pleadings and otherwise advance the action.  Robertson Declaration ¶¶ 7, 9; Szalasny Declaration ¶¶ 8-9.  Both Robertson and Szalasny agreed to be Named Plaintiffs with the understanding their involvement in such roles would be public record and discoverable to anyone searching the internet for them as well as Defendant, their former employer.  Robertson Declaration ¶ 8; Szalasny Declaration ¶ 9.  Both Named Plaintiffs discussed with Plaintiffs' Counsel the mediation sessions for which Robertson and Szalasny made themselves available to provide input if necessary.  Robertson Declaration ¶ 10; Szalasny Declaration ¶ 11.  Although not required to do so, both Named Plaintiffs were willing to answer written discovery requests or to sit for depositions, as well as to travel to participate in discovery, and have also remained in contact with Plaintiffs' Counsel, promptly and fully answering any and all questions and providing any additional information requested.  Robertson Declaration ¶¶ 11-14; Szalasny Declaration ¶¶ 11-14.  These facts establish both Robertson and Szalasny have, for more than five years,

expended time and effort assisting in the prosecution and litigation of this action for which the average recovery per New York Class member is $ 2,179.01, and the highest recovery $ 8,489.67, such that requested service awards of $ 10,000 are reasonable. *See Caccavale*, 2025 WL 882220, at *13 (determining $ 10,000 was reasonable service award where the facts suggested the named plaintiff's time and effort expended in assisting and prosecuting the actions, as well as that the average recovery per class member ranged from $ 1,260.11 to $ 12,601.13, was not so disproportionate as to preclude approval of the settlement).

### e.    Remaining *Grinnell* Factors

Having completed consideration of each of the Rule 23(e)(2) factors, the court addresses the few remaining *Grinnell* factors including the second factor (the reaction of the class to the settlement), third factor (the stage of the proceedings and the amount of discovery completed), and seventh factor (the ability of the defendants to withstand a greater judgment). Here, these factors weigh in favor of the Settlement Agreement.

In particular, the New York Class reaction to the proposed Settlement Agreement is positive as evidenced by the fact that no New York Class member objected to the settlement, thus satisfying the second Grinnell factor. Plaintiffs' Memorandum at 1, 2, 8. *See Gonzalez v. Hanover Ventures Marketplace LLC*, 2025 WL 1603941, at * 3 (S.D.N.Y. June 6, 2025) ("The Court also finds that the Class' reaction to the settlement was positive, as no Class Member objected to the settlement.). With regard to the stage of proceedings and amount of discovery completed, the third *Grinnell* factor, as Plaintiffs assert, Plaintiffs' Memorandum at 8, discovery in this action is complete, and the negotiations leading to the proposed Settlement Agreement heavily relied on

"significant information, including payroll records for the putative class and speaking with Opt-in Plaintiffs." *Id*. As for Trinity's ability to withstand a greater judgment, this seventh *Grinnell* factor is granted less weight because "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Manley v. Midan Rest. Inc.*, 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). In the instant case, although the court does not have sufficient information to determine whether Defendant could withstand a greater judgment, given that the amount to be recovered on the NYLL claims is 87% of the overtime and straight-time wages that could be recovered on such claims, this factor is at least neutral. *See Medina v. NYC Harlem Foods Inc.*, 2024 WL 230745, at * 5 (S.D.N.Y. Jan. 22, 2024) (finding a defendant's ability to pay more to be inconsequential). Accordingly, these three final *Grinnell* factors also point to finding the proposed Settlement Agreement is reasonable.

### f.    Settlement Agreement Approval for the New York Class

With the determination that the Settlement Agreement meets all requirements under Rule 23(e), and consideration that the *Grinnell* factors also weigh in favor of approval, the Settlement Agreement thus is approved with respect to the New York Class and NYLL claims.

### B.    Approval of FLSA Settlements

Having approved the Settlement Agreement as to the New York Class, the court next examines whether the Settlement Agreement should be approved with regard to the FLSA. "The FLSA permits employees to pursue collective actions to recover unpaid wages where the employees are 'similarly situated' and file a written consent to become a party." *Marin*, 2025 WL 893731, at * 5 (quoting 29 U.S.C. § 216(b)). Parties may not,

however, "privately settle and dismiss with prejudice FLSA claims absent approval of the district court or the United States Department of Labor."  *Id*. (citing *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022); and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  Where, as here, Department of Labor approval is absent, the parties must establish to the district court's satisfaction that the proposed settlement is "fair and reasonable."  *Velazquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).

> In determining whether a FLSA settlement is fair and reasonable, district courts
>
> consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  This standard for approval of a FLSA settlement based on the so-called "*Wolinsky factors*" "is lower than for a class action under Rule 23[,]" such that "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Relevant to the instant case, "[b]ecause 't]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* factors analysis will necessarily satisfy the standards of approval for the FLSA settlement." *Flores v. CGI Inc.*, 2022 WL 13804077, at *9 (S.D.N.Y. Oct. 21, 2022) (quoting *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)).

Here, the court has approved the Settlement Agreement by application of the
*Grinnell* factors.  *See* Discussion, *supra*, at 25-29, 35-36.  Accordingly, the Settlement
Agreement is also approved with regard to the FLSA claims.

### C.     Attorney Fees and Costs

The proposed Settlement Agreement also provides for Class Counsel to be paid
up to $ 280,000 in attorney fees, representing one-third of the GSF of $ 840,000, and up
to $ 35,000 in costs.  Settlement Agreement § 3.2.  "Under the FLSA and the NYLL, a
prevailing plaintiff is entitled to reasonable attorneys' fees and costs."  *Fisher v. SD
Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing 29 U.S.C. § 216(b); NYLL §
663(1); and *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)
(citing 29 U.S.C. § 216(b))).  "An award of costs 'normally include[s] those reasonable
out-of-pocket expenses incurred by the attorney and which are normally charged fee-
paying clients.'"  *Id*. (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818
F.2d 278, 283 (2d Cir. 1987); and citing *Torres v. Gristede's Operating Corp.*, 2012 WL
3878144, at *5 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 Fed.Appx. 1 (2d Cir. 2013) (affirming
costs awarded, including out-of-town travel, meals, photocopying, and other expenses)).

Attorneys' fees and costs in actions involving wage and hours disputes generally
arise in three contexts: (1) fee applications following a ruling in favor of plaintiff; (2) fee
applications following a settlement where the settlement agreement reserves the
questions of fees and costs for the court to decide; and (3) settlements incorporating
attorneys' fees and costs into the settlement amount.  *Fisher*, 948 F.3d at 601 (citations
and quotations omitted).  In the instant case, the third scenario applies given the

proposed Settlement Agreement provides for Plaintiffs' Counsel to receive an attorney fee award of one third the GSF.

"As with all aspects of the Settlement Agreement, the Court must carefully scrutinize the provisions providing for the payment of attorneys' fees, costs, and enhancement payments to ensure that they are fair and reasonable." *Chambery*, 2014 WL 3725157, at * 8 (citing *Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp. 172, 183 (W.D.N.Y. 2011)). Just as the absence of objections to a settlement agreement does not relieve the court of its independent obligation to assess whether the settlement if fair and reasonable, the lack of objections also does not excuse the court from assessing the fairness and reasonableness of an agreed-upon attorney's fee award, although it is a factor weighing in support of approving the requested fee. *Davis*, 827 F.Supp.2d at 183 (citing cases).

### 1.    Attorney Fees

Whether the requested fees are fair and reasonable may be determined pursuant to either the so-called "percentage of fund" approach or the "lodestar approach." *See Vazquez v. Lamont Fruit Farm, Inc.*, 2011 WL 6148806, at * 3  n. 3 (W.D.N.Y. Dec. 12, 2011) ("This Court notes that in the Second Circuit, an attorneys' fees award in a class action settlement may be calculated either with the 'lodestar' approach or by the 'percentage of fund' approach, although the trend has been toward use of the 'percentage of fund' approach, under which the attorneys' fees award is set as a percentage of the total award." (quoting *McDaniel,* 595 F.3d at 417).  When considering an award of attorney fees in a class action case, the trend in the Second Circuit has been to use the percentage method, with the lodestar method used to 'cross-check'

along with several other considerations with respect to the requested fee's reasonableness. *Chambery*, 2014 WL 3725157, at * 8. These reasonableness considerations include, "'[1] the time and labor expended by counsel; [2] the magnitude and complexities of the litigation; [3] the risk borne in the litigation; [4] the quality of the representation; [5] the requested fee in relation to the settlement; and [6] public policy considerations.'" *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). The additional considerations are referred to the "*Goldberger* factors." Further, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citing *In re Prudential Ins. Co. Am. Sales Litig.,* 148 F.3d 283, 342 (3d Cir.1998) (approving this practice)).

In the instant case, the requested award of one-third the GSF is not unreasonable on its face. *See Chambery*, 2014 WL 3725157, at * 9 (considering a requested attorney fee award of one-third the total settlement fund to be "not unreasonable on its face," and citing *Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 621 (S.D.N.Y. 2012) (considering the class action plaintiff's counsel's "request for one-third of the [settlement] Fund is reasonable and 'consistent with the norms of class litigation in this circuit." (internal quotation omitted)). Nevertheless, the court next cross-checks the percentage-based fee request against the lodestar method in consideration of the *Goldberger* factors.

As regards the first *Goldberger* factor, Plaintiffs, in support of the requested attorney fees, submit billing records consisting of entries documenting the total time and

labor expended by each attorney and paralegal and other administrative employees for each year this action has been pending, as well as the hourly billing rate for each such employee. Second Brown Declaration Exh. 2 (Dkt. 104-2) at 2-3 ("Billing Summary"). Plaintiffs also submit an itemized summary of contemporaneous time entries for each employee who worked on the action with a description of the work performed. *Id*. at 4-76 ("Itemized Billing Records"). The Billing Summary shows a total of 1,013.7 hours were expended by 18 different employees including eight attorneys and ten paralegals or other assistants between 2019 and 2023. Billing Summary at 2-3. The hourly rates for such employees range from $ 75 for paralegals and other assistants to $ 175 for associate attorneys to $ 250 for senior attorneys. *Id*. The Billing Summary calculates the total fees by multiplying the number of hours worked by each employee by the respective hourly rates, yielding $ 197,545 in total fees. *Id*. at 3. Dividing the $ 280,000 in percentage-based fees requested by $ 197,545 yields a "lodestar multiplier" of 1.42. Although district courts will reduce a percentage-based fee award that exceeds the lodestar figure by too much, district courts have approved multipliers of up to 3.5. *See Cunningham v. Suds Pizza, Inc.*, 290 F.Supp.3d 214, 232 (W.D.N.Y. 2017) (approving in hybrid NYLL class action and FLSA collective action multiplier of 2.84 as "within the range of multipliers accepted by courts in this district" and citing cases from this district approving lodestar multipliers ranging from 1.04 to 5.3); *In re Visa Check/Mastermoney Antiturst Litig.*, 297 F.Supp.2d 503, 522 (E.D.N.Y. 2003) (reducing multiplier to 3.5 after finding the requested multiplier of 10 to be "absurd").

The second *Goldberger* factor pertaining to the magnitude and complexities of the litigation, this is a hybrid action involving both NYLL claims brought on behalf of a

Rule 23 class, and FLSA claims brought on behalf of a collective class. Both the NYLL and FLSA claims involved factual and legal questions and faced potential defenses by Defendant for which Plaintiffs no doubt benefited from Plaintiffs' Counsel extensive experience in employment litigation and particular expertise with the FLSA and NYLL. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (considering plaintiff's counsel's "extensive experience in employment litigation, and particular expertise with the FLSA" as supporting the reasonableness of the requested fee award). Accordingly, this action is of sufficient magnitude and complexity to support the requested fee award.

Further, Plaintiffs' counsel, who accepted the action on a contingency fee basis, faced inherent risks that they might not recover any fees should the action not result in a recovery for Plaintiffs. If this case did not settle, it is likely that Defendants would have challenged certification of the FLSA Collective as well as Plaintiff's motion for certification of the New York Class pursuant to Rule 23, and also filed for summary judgment. First Brown Declaration ¶ 14. Several defenses were available to Defendant including challenging that the pre- and post-shift work for which Plaintiffs seek compensation in this action was not compensable, the claimed uncompensated time is grossly exaggerated or is *de minimus* and thus not compensable, Defendant's rounding policy was fairly implemented, that Plaintiffs' claims relative to straight time damages are untenable or not well-suited for class treatment, and that Plaintiffs cannot successfully establish any willful violations of the relevant FLSA and NYLL wage and hours provisions for which they sue. *Id*. ¶ 15. These risks undercut the certainty of ultimate recovery and weigh in favor of the requested fee award, *Frank*, 228 F.R.D. at

189, thus satisfying the third *Goldberger* factor.  That amounts of recovery provided under the Settlement Agreement, *i.e.*, 100% recovery on the FLSA claims and 87% recovery on the NYLL claims, is meaningful and thus supports finding both the quality of representation and the amount of the fee in relation to the settlement sufficient to substantiate the requested fee award.  *See Acevedo v. Workfit Medical LLC*, 187 F.Supp.3d 370, 383 (W.D.N.Y. 2016) (finding the "meaningful relief" obtained for plaintiffs by class counsel established such counsel were zealous advocates).  Finally, public policy considerations, including the need for counsel to represent plaintiffs on a contingency fee basis in complex class actions involving labor law claims such as the instant action wherein Plaintiffs seek to recover unpaid wages for hours worked, will be furthered by the granting of attorney fees.  *See Beebe v. V&J National Enterprises, LLC*, 2020 WL 2833009, at * 9 (W.D.N.Y. June 1, 2020) ("Public policy considerations counsel in favor of an award of fees—'[f]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (further quotation omitted)).

For the foregoing reasons, Plaintiffs' Counsel is awarded $ 280,000 in attorney fees to be paid from the GSF as provided in the Settlement Agreement.

### 2.    Costs

Plaintiffs' counsel also seeks $ 14,581.54 in litigation costs of which the largest part, $ 7,850, represents the settlement administration costs to be paid to the Claims Administrator.  "Courts typically allow counsel to recover their reasonable out-of-pocket

expenses." *Morris*, 859 F.Supp.2d at 624 (permitting reimbursement of "filing fees, telephone charges, postage, transportation, working meals, photocopies, and electronic research.").

Here, Plaintiffs' Counsel has provided for a breakdown of the costs incurred in this litigation. The costs do not appear unreasonable based on the court's understanding that the costs were actually incurred. Significantly, the Claims Administrator has, and will continue to, perform significant administrative duties with respect to this action, including preparing, printing, and mailing the notices regarding the class and collective action settlement, receiving and tracking claims forms submitted by the Settlement Class members, for whom Simpluris will also prepare and mail settlement checks. *Acevedo*, 187 F.Supp.3d at 383-84.

Based on the information provided to the court, the litigation costs are reasonable and fair. The court therefore grants Plaintiffs' counsel's request for payment of 14,581.54 in litigation costs, to be paid from the GSF as set forth in the Settlement Agreement.

**3.    Final Order and Judgment**

With the certification of the NYLL Class and approval of the Settlement Agreement,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

Except as otherwise defined herein, all capitalized terms used in this Final Order and Judgment shall have the same meanings as ascribed to the in the Settlement Agreement executed by counsel on behalf of the Named Plaintiffs and Class Members, and Defendant, respectively.

1.      The court has jurisdiction over the subject matter of this Litigation, Plaintiffs, the Class Members, and Defendant for purposes of approving the Settlement Agreement.

2.      For the sole purpose of settling and resolving this Litigation, the court certifies the New York Class pursuant to Fed.R.Civ.P. 23 which is defined as: those individuals who were employed by Defendant Trinity as a non-exempt, hourly production employee at its manufacturing facility located in Buffalo, New York from May 22, 2013 through March 26, 2019.

3.      For the sole purpose of settling and resolving this Litigation, the court hereby makes a final determination that the Named Plaintiffs and the Opt-in Plaintiffs are "similarly situated" for purposes of 29 U.S.C. § 216(b).  "Opt-In Plaintiffs" means the Named Plaintiffs and those individuals who have filed a timely consent to participate in the Litigation.

4.      On January 17, 2023, this court preliminarily approved the Settlement Agreement (Dkt. 100) ("Preliminary Approval Order").

5.      Notice to the Opt-in Plaintiffs and New York Class members has been provided to the fullest extent reasonably possible in accordance with the court's Preliminary Approval Order, and the substance of and dissemination program for the notice—which included direct notice through the U.S. Mail, which provided the best practicable notice under the circumstances and was reasonably calculated, under the circumstances, to apprise the Opt-in Plaintiffs and New York Class members of the pendency of the Litigation, Class Counsel's application for attorneys' fees and reimbursement of litigation costs, Service Awards to the Named Plaintiffs, Simpluris,

Inc.'s fees and costs for serving as the Settlement Claims Administrator, and the rights of New York Class Members to object or request exclusion from the Settlement Agreement and to appear at the Final Approval Hearing—was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and fulfilled the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 216(b) of the FLSA, the Constitution of the United States and any other applicable laws and due process.

6.    The Settlement Agreement was the result of arm's-length negotiations, including two mediation sessions overseen by Mediator William F. Bauer, and conducted in good faith by experienced attorneys familiar with the legal and factual issues and is supported by the Named Plaintiffs and Class Counsel.

7.    The Named Plaintiffs and Class Counsel adequately represented the Opt-in Plaintiffs and New York Class members for purposes of entering into and implementing the Settlement Agreement.

8.    The court hereby confirms its prior appointment of Named Plaintiffs. John Szalasny is appointed as the Class Representative of the New York Class, and both Named Plaintiffs, John Szalasny and Claude Robertson, are appointed as representatives of the Opt-in Plaintiffs.

9.    The court hereby confirms its prior appointment of Jason T. Brown and Nicholas Conlon of Brown, LLC, for settlement purposes only, as Class Counsel for the Class Members.

10.    The court hereby approves the Settlement Agreement and hereby orders that the Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions.

11.    The court finds that the settlement embodied in the Settlement Agreement is fair, reasonable, and adequate to the Named Plaintiffs, Opt-in Plaintiffs, and New York Class members, and more particularly finds that:

a.  The settlement was negotiated vigorously and at arm's-length under the auspices of the Mediator by Defense Counsel, on one hand, and the Named Plaintiffs and Class Counsel on behalf of the Opt-in Plaintiffs and New York Class members, on the other hand;

b.  Plaintiffs and Defendant had sufficient information to evaluate the settlement value of the Litigation;

c.  If the Settlement had not been achieved, Named Plaintiffs and the Opt-in Plaintiffs and New York Class members faced the expense, risk and uncertainty of extended litigation;

d.  The amount of the Settlement is fair, reasonable, and adequate, taking into account the costs, risks, and delay of trial and appeal.  The method of distributing the Settlement Fund is efficient and the claims process was not overly burdensome.  The Settlement terms related to Service Awards, attorneys' fees and costs, and fees and costs of the Settlement Claims Administrator do not raise any questions concerning fairness of the Settlement and there are no agreements, apart from the Settlement, required to be considered under Fed. R. Civ. P. 23(e)(2)(c)(iv).  The

Settlement Fund is within the range of settlement values obtained in similar cases;

e.  At all times the Named Plaintiffs and Class Counsel have acted independently of Defendant and in the interest of the Opt-in Plaintiffs and New York Class members; and,

f.  There were no filed objections to the Settlement.

12.    The plan of allocation of the Net Settlement Fund is finally approved as fair, reasonable, and adequate.  The Settlement Claims Administrator shall distribute the Net Settlement Fund in accordance with the Settlement Agreement.  The Settlement Claims Administrator shall have final authority to determine the share of the Net Settlement Fund to be allocated to each Class Member in accordance with the terms of the Settlement Agreement approved by the court.

13.    All requirements of the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.*, have been met.

14.    The releases and covenants not to sue set forth in the Settlement Agreement, including but not limited to Section 4 of the Settlement Agreement, together with the definitions contained in the Settlement Agreement relating thereto, are expressly incorporated herein in all respects. Accordingly, the court orders that:

a.  Named Plaintiff Szalasny, any other Opt-In Plaintiff who worked in New York and did not submit a timely, valid Opt-out Statement, and each Class Member who received Notice pursuant to this Agreement (except persons who timely and properly opted out of the settlement under Section 2.5) forever and fully release Defendant from all wage and hour

claims asserted under state law by and on behalf of the Class (the

"Released Rule 23 Claims").  The Released Rule 23 Claims include

all claims under the local and state laws of New York for unpaid wages,

and any related wage and hour claims, penalties, liquidated damages and

interest on such claims, and attorneys' fees and costs related to such

claims relating to Class Members' employment with Defendant

from May 22, 2013 through the Effective Date.

b.  In addition to the Released Rule 23 Claims, based on their submission

of consent forms or Claim Forms, the Named Plaintiffs, Opt-in Plaintiffs,

and Participating Class Members forever and fully release Defendant from

all FLSA claims asserted in the Litigation ("Released FLSA Claims").  The

Released FLSA Claims include all FLSA claims for unpaid overtime

wages, any related wage and hour claims, liquidated damages, interest,

penalties, and attorneys' fees and costs related to such claims relating to

Named Plaintiffs', Opt-in Plaintiffs', and Participating Class Members'

employment with Defendant through the Effective Date.

c.  In addition to the Released Rule 23 Claims and Released FLSA

Claims, by signing and cashing their Settlement Checks, the Named

Plaintiffs receiving a Service Award additionally waive, release and

discharge Defendant from all claims, demands, causes of action, and

liabilities, whether known or unknown, relating to their employment with

Defendant, including but not limited to claims under the Americans With

Disabilities Act, National Labor Relations Act, Fair Labor Standards Act

(including but not limited to claims for overtime compensation), Equal Pay

Act, Employee Retirement Income Security Act of 1974, Worker

Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act

of 1964, Civil Rights Acts of 1866, 1871 and 1991, Age Discrimination in

Employment Act, Family and Medical Leave Act, and any other federal,

state or local statute, regulation, and order, and in common law, through

the date the Named Plaintiffs sign this Agreement.  Named Plaintiffs do

not release any claim that cannot be released as a matter of law or rights

under this Agreement.

d.  Nothing in the Settlement Agreement or this Order will be considered a

waiver of any claims by Plaintiffs or Class Members that may arise after

the Effective Date.

15.    The Named Plaintiffs, Opt-in Plaintiffs, and each Class Member who

received Notice pursuant to this Agreement (except persons who timely and properly

opted out of the settlement under Section 2.5), acting individually or together, or in

combination with others, are hereby permanently and finally barred and enjoined from

suing the Releasees (including Defendant) in any action or proceeding alleging any of

the Released Claims.

16.    The Named Plaintiffs, Opt-in Plaintiffs, and each Class Member who

received Notice pursuant to this Agreement (except persons who timely and properly

opted out of the settlement under Section 2.5) hereby releases the Releasees from any

claims, liabilities, and attorneys' fees and expenses arising from the allocation of the

Gross Settlement Amount or Net Settlement Fund and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

17.     The operative complaint and all claims asserted therein in the Litigation are hereby dismissed with prejudice and without costs to any of the Parties and Releasees other than as provided for in the Settlement Agreement.

18.     The court awards to Class Counsel $280,000.00 as fair and reasonable attorneys' fees, which shall include all attorneys' fees associated with the Litigation.  In addition, Class Counsel shall receive reimbursement of costs associated with the Litigation actually incurred, up to the amount of $14,581.54.  These amounts shall be paid from the Gross Settlement Amount as set forth in the Settlement Agreement.

19.     The court awards to Simpluris, Inc. $7,850.00 for serving as the Settlement Claims Administrator.  This amount shall be paid from the Gross Settlement Amount as set forth in the Settlement Agreement.

20.     The court awards to each Named Plaintiff a Service Award of $10,000.00 for their risk, time and effort in this Litigation.  The amount shall be paid from the Gross Settlement Fund pursuant to the terms of the Settlement Agreement.

21.     Based on the amounts approved for attorneys' fees, costs associated with the Litigation, the payment to the Settlement Claims Administrator, and the Service Awards, the Net Settlement Fund is $ 517,568.46.

22.     The court shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance of the Settlement Agreement or any challenges as to the performance, validity, interpretation, administration, enforcement, or enforceability of the notices and payments made under the Settlement Agreement,

this Final Order and Judgment, or the Settlement Agreement or the termination of the Settlement Agreement.

23.    Any motion to enforce this Final Approval Order and Judgment or the Settlement Agreement, including by way of injunction, may be filed in this Court, and the provisions of the Settlement Agreement and/or this Final Approval Order and Judgment may also be asserted by way of an affirmative defense or counterclaim in response to any action that is asserted to violate the Settlement Agreement.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        August 5, 2025
             Buffalo, New York